CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

6/26/2017

JULIA C. DUDLEY, CLERK
BY: s/ JODY TURNER
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| **TERRY A. RIGGLEMAN**, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No 5:17CV00063 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **HAROLD CLARKE**, in his individual | ) | |
| and official capacities and | ) | |
| **MARK AMONETTE**, in his individual | ) | |
| and official capacities, | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT FOR EQUITABLE RELIEF REGARDING PLAINTIFF AND ALL CLASS MEMBERS AND COMPENSATORY RELIEF FOR PLAINTIFF ONLY

COMES NOW Plaintiff, Terry Riggleman, and files this Complaint

individually, and on behalf of a class of other similarly situated persons, pursuant

to 42 U.S.C. § 1983 and state laws, against the Virginia Department of Corrections,

with respect to vindicating his rights guaranteed by the Eighth Amendment of the

United States Constitution and by the Constitution of the Commonwealth of

Virginia.

## INTRODUCTION

This case is straight forward: Does the Constitution permit these

Defendants to knowingly refuse to treat an inmate's Hepatitis C — a known

1

debilitating and fatal infection—until that inmate's Hep C reaches a more fatal stage of progression. Here, Defendants have refused to treat Plaintiff's known Hep C because, according to Defendants, Plaintiff's Hep C has not progressed far enough. Defendants' conduct is unconstitutional. Once these Defendants know any inmate under their care and custody has been infected by Hep C, these Defendants have a Constitutional mandate to treat said inmate's Hep C infection. Defendants' constitutional mandate becomes even stronger because Hep C can now be *cured*. But instead of curing Hep C, Defendants have permitted inmates (such as Plaintiff) to be infected by Hep C—without treatment—until they reach their deathbed.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(4), under 42 U.S.C. § 1983, and on the supplemental jurisdiction of this Court to adjudicate claims arising under state law pursuant to 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b) and L.R. 2 (b) because (1) a substantial part of the events and omissions giving rise to Mr. Riggleman's claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

## ADMINISTRATIVE EXHAUSTION

### 2.

Mr. Riggleman has exhausted all his available administrative remedies.

## PARTIES

### A. Terry Riggleman, Plaintiff

### 3.

Plaintiff, Terry A. Riggleman, was at all times relevant to this action an offender incarcerated by the VDOC. From March 5, 2009 to the present day, Plaintiff has been housed at Augusta Correctional Center, a penal institution operated by the VDOC located in Craigsville, Virginia. Plaintiff is infected with Hepatitis C. The facts pertaining to his claims are outlined below in the sections entitled, "Relevant Facts" and "Counts."

### B. Harold Clarke, Defendant

### 4.

Defendant Harold Clarke is the Director of the VDOC. He is responsible for all the oversight, operation, and administration of the Commonwealth's correctional system, including providing appropriate medical treatment and the formulation of policies that ensure the provision of that appropriate medical treatment to Plaintiff and those similarly situated. Clarke has a statutory duty to know that inmates such as Plaintiff under Clarke's care, custody, and control have Hepatitis C and need treatment for Hepatitis C (Hepatitis C is a common and

known problem within Virginia prisons). Indeed, Clarke knows that many inmates under his custody and control have Hep C, and knows that he and Defendant Amonette have deliberately failed to treat said inmates known to carry the Hep C infection. Clarke has deliberately instituted, condoned, and ratified a VDOC policy in which VDOC inmates known to be infected with Hep C are not treated for said Hep C infection.

Clarke is being sued in his official and individual capacities. At all relevant times, Defendant Clarke has acted and will continue to act under color of state law.  At all times relevant, Clarke was responsible for knowing all applicable laws regarding the medical treatment of inmates under the VDOC's care, custody, and control.

## C. Dr. Mark Amonette, Defendant

5.

Defendant Mark Amonette is the Chief Medical Director of the VDOC and is responsible for overseeing the delivery of medical services to VDOC inmates. As director of medical services for all VDOC, Dr. Amonette has a statutory duty to know that inmates such as Plaintiff have Hepatitis C and thus need treatment for Hepatitis C. Amonette's statutory duty also extends to collecting data about inmates who have Hepatitis C. Amonette's duties also include ensuring treatment for all inmates who are known to have Hepatitis C while under the care and custody of the VDOC—irrespective of what stage said Hepatitis C has reached.

4

(Hepatitis C is a common and known problem within Virginia prisons.) Indeed, as VDOC's Chief Physician/Medical Director, and a high-ranking official under the supervision of Defendant Clarke, Amonette has reported on many occasion to Clarke that VDOC inmates known to be infected by Hep C are not receiving treatment for their Hep C infection. Amonette has deliberately instructed subordinate medical staff to *not* treat a known Hep C infection being carried by a VDOC inmate. Clarke has deliberately instituted, condoned, and ratified a VDOC policy in which VDOC inmates known to be infected with Hep C are not treated for said Hep C infection.

Defendant Amonette is sued in his individual and official capacities. At all times relevant, Amonette was responsible for knowing all applicable laws regarding the medical treatment of inmates under the VDOC's care, custody, and control. He has acted and will continue to act under color of state law.

## RELEVANT FACTS

### A. The Hepatitis C Epidemic

6.

Hepatitis C is a viral infection, primarily spread through contact with infected blood that attacks the liver and causes hepatitis, or liver inflammation, which can significantly impair the liver's ability to assist the body in digesting essential nutrients, filter toxins from the blood, and prevent disease.

7.

Hepatitis C infections are of multiple genotypes and can be of an acute or chronic nature. An acute infection, a short-term illness, occurs within the first six (6) months of exposure to the virus and, for many people, it leads to chronic Hepatitis C infection.

8.

Chronic Hepatitis C infections are serious, long-term illnesses that can last throughout a person's life. Hepatitis C is the leading cause of cirrhosis (irreversible scarring of liver tissue) and liver cancer and is the most common cause of liver transplants. Chronic Hepatitis C infection can also cause serious chronic liver disease, liver fibrosis (scarring of liver tissue), and death.

9.

Cirrhosis of the liver can cause symptoms such as swelling, increased likelihood of bruising, jaundice, itching, nausea, and problems with concentration and memory.

10.

Hepatitis C infections occur upon transmission of blood from a person infected with Hepatitis C to another person. The major means of transmission are the sharing of equipment for injecting drugs; tattooing or piercing; through needle-stick injuries; being born to a mother with Hepatitis C; transfusion with

infected blood or blood products; and by sexual contact with a person infected with Hepatitis C.

11.

Each day without treatment increases the likelihood of cirrhosis, fibrosis, liver cancer, the need for a liver transplant, complications from the disease, death from liver failure due to chronic Hepatitis C infection, and the risk of transmitting Hepatitis C to others.

12.

Liver transplants are painful, carry a risk of significant complications, and are nearly impossible for prisoners to obtain. Transplants result in lower recovery rates than treatment with direct-acting antiviral drugs, and transplants are very costly.

13.

By not providing necessary medical care in the form of treatment for Hepatitis C, Defendants' actions threaten Plaintiff and those similarly situated with death and other irreparable harm stemming from their Hepatitis C infections. Plaintiff and members of the proposed class have suffered and will continue to suffer grave and irreparable harm unless this Court orders Defendants to provide the safe and effective treatment with direct-acting antiviral drugs as described below.

14.

On information and belief, approximately thirty to forty percent of inmates under the supervision of the VDOC are currently infected with Hepatitis C.

15.

The CDC recommends that persons with an increased risk for Hepatitis C infection be tested, including, but not limited to, persons born from 1945-1965; persons who have injected illegal drugs; persons who received blood, blood products, or transplants before 1992; persons with an HIV infection; persons born to a positive mother infected with Hepatitis C; and any persons with known exposure to the virus.

**B. Standard of Care for Hepatitis C Infections**

16.

For many years, finding and establishing an effective and safe treatment for Hepatitis C infections was a highly elusive goal. The standard treatment, which included the use of interferon and ribavirin medications, failed to cure large numbers of patients and was associated with painful and other adverse side-effects, including psychiatric and autoimmune disorders, flulike symptoms, and gastrointestinal distress.

17.

Over the past three years, the approval by the Federal Drug Administration (FDA) of new direct-acting antiviral drugs (DAAD) has greatly improved the treatment module for Hepatitis C infections.

18.

In 2011, the FDA approved the use of protease inhibitors called boceprevir (under brand name Vicrtrelis) and telaprevir (under brand name Incivek), and the standard of care developed into a "triple therapy" to include the combination of either boceprevir or telaprevir, plus ribavirin and interferon. The triple therapy improved results for many patients, but continued to produce painful and adverse side effects, and the treatment duration could take 48 weeks to complete.

19.

In 2013, the FDA approved DAAD medications called simeprevir (under brand name Olysio) and sofosbuvir (under brand names Sovaldi). At this time, the recommended treatment was DAAD such as Solvadi combined with ribavirin, or with interferon, depending on the patient's other symptoms and medical diagnoses.

20.

In late 2014, the FDA approved the use of Sovaldi in combination with Olsyio for the treatment of Hepatitis C.

21.

On October 10, 2014, the FDA specifically approved Harvoni, a pill that is taken once a day and combines sofosbuvir and ledipasvir.

22.

Harvoni eliminates the need for the patient to take interferon and/or ribavirin, which were largely responsible for the adverse and difficult side-effects of treating Hepatitis C.

23.

Solvaldi (sofosbuvir), Olysio (simeprevir), and Harvoni have few side effects, greater efficacy, can reduce treatment durations by 75 percent, and are administered orally rather than by injections.

24.

The new treatment modules utilizing these newest DAAD have very high cure rates (over 90% of patients treated for Solvaldi and over 95% for Harvoni), have fewer and far less serious side-effects than the previous treatment modules, and involve a far shorter treatment time (12-24 weeks).

25.

The standard of care in the community for Hepatitis C infections—the use of the latest DAAD—is now well-established; the CDC has recommended these new treatment modules and the Federal Bureau of Prisons (BOP), in 2014, adopted new Clinical Practice Guidelines that incorporate these new DAAD

treatment modules. Under the CDC and the BOP guidelines, the recommended treatment depends further upon the particularized genotype, the acute or chronic status of the disease, and prior attempts to treat the patient's Hepatitis C infection.

26.

Correctional systems in California, Illinois, Washington, Wisconsin, Oregon, and New York have also developed procedures to provide DAADs to individuals that fall within their guidelines, and have started prescribing these lifesaving medications to certain prisoners.

**C. Virginia DOC Policy for Hepatitis C Infections**

27.

Defendants have refused to use direct-acting antiviral drugs to treat VDOC inmates known to be infected with Hep C.

28.

Defendants have failed to implement a policy that ensures the treatment of Hepatitis C as soon as an inmate is diagnosed with the infection.

29.

Defendants knowingly permit inmates to carry the Hep C infection without treatment; Defendants do not treat all inmates known by them to have a Hep C infection.

30.

Defendants require an inmate's Hepatitis C infection to meet certain criteria before treating said Hep C infection because Defendants do not want to pay for Hepatitis C treatment prior to meeting said criteria.

31.

Defendants have ceased providing treatment to inmates with Hepatitis C infections, including the combination therapy of interferon and ribavirin, or the triple therapy of boceprevir/telaprevir with interferon and ribavirin.

32.

Defendants have denied requests by Plaintiff Riggleman, and by other members of the class, for direct-acting antiviral treatment, to treat their respective Hepatitis C infections.

33.

The VDOC subcontracts its medical care to private medical care companies, but also employs medical care professionals, including correctional health care administrators, at each institution.

34.

Regarding the provision of treatment for Hep C, Defendants make the ultimate determination as to whether VDOC inmates will receive treatment for their diagnosed Hep C infection.

35.

The Health Services unit is a unit within the VDOC that provides oversight of medical care services to VDOC inmates.

36.

Individuals seeking medical treatment for their Hepatitis C infections have merely been informed that the VDOC/Health Services unit is revaluating their treatment protocol for Hepatitis C and that it is pending approval.

37.

Plaintiff and all class members have not received the necessary medical treatment for Hepatitis C, including the latest DAAD such as Solvaldi (sofosbuvir), Olysio (simeprevir) or Harvoni (sofosbuvir with ledipasvir).

38.

As a consequence of Defendants' policy of not providing all known inmates infected by Hep C with Hep C treatment, Plaintiff and all class members with Hepatitis C infections have a substantially increased risk of continued Hepatitis C infection, liver disease, liver cancer, cirrhosis, and death.

39.

There is no medical justification for a treatment module for Hepatitis C infection that does not utilize the direct-acting antiviral drugs such as simeprevir (Olysio) and sofosbuvir (Solvaldi) or sofosbuvir with ledipasvir (combined as Harvoni). To the extent that the direct-acting antiviral treatment has not been

instituted because of financial considerations, such concerns are unconstitutional and are otherwise in violation of the United States Constitution, the Virginia Constitution, and Virginia state law as they deny necessary and appropriate medical care to Plaintiff and members of the class.

### D. Plaintiff Terry Riggleman

40.

Plaintiff Terry Riggleman is currently incarcerated at Augusta Correctional Center (ACC), a facility owned and operated by VDOC. At all times relevant to this Complaint, Plaintiff was under the care, custody and control of the Director of VDOC, Defendant Clarke; prior to, and during, the time that Plaintiff's Hepatitis C has gone untreated by the named Defendants, Clarke knew that inmates under his care and custody have had Hepatitis C that required treatment, because (1) it was reported to him by his subordinate officers and because (2) another inmate who has untreated Hepatitis C—while under Clarke's care custody and control-- filed a lawsuit against Defendant Clarke in January 2017.

41.

Mr. Riggleman was diagnosed with Hepatitis C in 2005 while he was incarcerated at Lawrenceville Correctional Center, a private prison overseen by VDOC.

42.

In 2008, while being housed at Nottaway Correctional Center, a facility owned and operated by VDOC, Plaintiff began to experience and suffer from severe abdominal and liver pain that accompanied digestive and bowel issues.

43.

After months of verbally complaining, filing informal complaints and formal grievances, and having his family make phone calls to the VDOC, Plaintiff was finally taken to MCV Hospital in Richmond, Virginia where he was diagnosed with gall stones.

44.

On March 5, 2009, Plaintiff was transferred to ACC, where Dr. Marsh (acting physician at ACC) scheduled Plaintiff for gall bladder removal at UVA Hospital.

45.

After his gall bladder removal, Plaintiff continued to suffer constantly from serious digestive issues, and his liver enzyme levels elevated.

46.

Plaintiff asked Dr. Marsh about Hepatitis C treatment, and Dr. Marsh told Plaintiff that he did not qualify for Hep C treatment at that time, and that the possible complications from Interferon were worse than any discomforts that Plaintiff was experiencing at that time.

47.

Between 2009 and 2013, Plaintiff continued to see medical staff at ACC for digestive issues, joint pain, chronic care appointments, and a kidney stone, all the while asking about Hepatitis C treatment and being told that his enzyme levels were not elevated enough to receive treatment or, alternatively, that the side effects of the treatment are worse than the symptoms and effects of the virus.

48.

In 2013, Plaintiff learned about the new DAAD treatment for Hepatitis C, and when Plaintiff asked ACC medical staff about the new treatment, he was told to be patient and that the VDOC was developing a new treatment plan.

49.

In September 2014, Plaintiff requested to see his medical file so that he could file a civil complaint. Three months later, he was informed by the VDOC Health Services unit that it was not policy to allow inmates to view their entire medical file, and that he would have to pay $0.10 per page to obtain a copy of it (hundreds of pages).

50.

On December 16, 2014, Plaintiff again inquired about the new DAAD treatment for Hepatitis C, and he was told that the VDOC had not approved its use at the time and that the Hepatitis treatment guidelines were pending approval.

51.

On December 20, 2014, Plaintiff asked to for copies of specific HCV-related lab test reports, and he was told to specify in greater detail which labs he wanted.

52.

On January 6, 2015, Plaintiff once again requested copies of lab reports, specifically the labs that contain his HCV fibrosis score, HCV fibrosis stage, necroinflammant activity score, and necroinflammant activity grade – lab results which are essential to determining the exact amount of liver damage and HCV disease progression stage. In response, ACC Medical told him: "We do not have any lab work with what you are asking for."

53.

Throughout the next twelve months, Plaintiff continued to see the medical staff at ACC, including Dr. Dale Moreno and Dr. Diane Landauer, for chronic joint pain, nerve pain, digestive issues, and chronic care, continued to ask about treatment for his Hepatitis C, and also voiced concerns about the multiple pain medications he was taking and their possible effects on his liver as a Hepatitis C patient.

54.

On January 5, 2016, Plaintiff saw Dr. Moreno, voicing the same concerns about his liver, and Moreno ordered labs to check Plaintiff's enzyme levels. On

January 25, 2016, Dr. Moreno signed off on these labs but never informed Plaintiff that his AST had elevated to 67 and his ALT had elevated to 91.

55.

On November 3, 2016, Dr. Landauer finally submitted a Hepatitis C referral request on behalf of Plaintiff to the VDOC Medical Director, Defendant Amonette.

56.

On November 8, 2016, Defendant Amonette sent Dr. Landauer a memo regarding Plaintiff, stating, "After review of the information provided it is determined that the above offender does not met the criteria for Hep. C treatment at this time." Amonette never denied that Plaintiff had Hepatitis C.

57.

On November 11, 2016, Plaintiff received notice from Mediko Healthcare stating that "DOC has reviewed your labs and status, at this time, does not meet criteria for treatment."

58.

On December 1, 2016, Plaintiff sent a request to medical asking if they could explain the criteria for Hepatitis C treatment, and the response was: "It is done on a case by case basis."

59.

On January 11, 2017, Plaintiff sent a request to medical asking for the medical reason that Mediko and/or the VDOC will not provide Hepatitis C

treatment to all offenders infected with the Hepatitis C virus, and the response was: "Not meeting criteria."

60.

On January 11, 2017, Plaintiff was informed that "determination for Hep. C treatment is made by the DOC Medical Director."

61.

While pursuing and exhausting all available administrative remedies in writing, Plaintiff continued to seek medical treatment for his symptoms, and during this time, Plaintiff saw Dr. Moreno and Dr. Landauer, and continued to verbally request Hepatitis C treatment.

62.

Ella Shipp, Registered Nurse, is one of the nurses at Augusta Correctional Center, and in that capacity, is responsible for responding to informal complaints and medical requests from inmates, including Plaintiff and those similarly situated.

63.

On February 19, 2017, Plaintiff discovered that numbers from old blood work were submitted with his Hepatitis C referral request by Dr. Landauer on November 3, 2016. The viral load sent was from November 30, _**2011**_ and the Pt/INR sent was from April 29, _**2015**_.

64.

VDOC policies mandate that Hepatitis C patients have lab tests taken annually.

65.

After complaining that his labs were not being taken annually, as VDOC policy mandates, and being told twice that his complaint was unfounded, Plaintiff was called to medical to have new labs taken and a new Hepatitis C referral was submitted.

66.

On March 21, 2017, Plaintiff was informed again that he does not meet criteria for Hepatitis C treatment.

67.

Defendants are aware that Plaintiff currently suffers from symptoms of Hepatitis C, including chronic joint pain, constant abdominal pain, perpetual digestive issues, unrelenting nerve pain, frequent urination, and constant fatigue, but they continue to deny Plaintiff Hep C treatment.

**E.  CLASS ACTION ALLEGATIONS**

68.

Plaintiff brings this suit as a class action on behalf of himself and all others similarly situated (the "Class") pursuant to Rules 23(a) and 23(b)(2).

69.

Plaintiff seek to represent the following class on claims for declaratory and injunctive relief:

All persons who are currently incarcerated in a Virginia Department of Corrections facility who have at least twelve (12) weeks or more remaining to serve on their sentences and whose Department of Corrections medical records demonstrate that they have Hepatitis C.

70.

Plaintiff reserves the right to amend the class definition if further investigation and discovery demonstrates that the class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

71.

As a result of Defendants' deliberate indifference to the serious medical needs of the Class, members of the Class are or will be subjected to cruel and unusual punishment and deprived of their federal and state constitutional and

statutory rights. Plaintiff seeks declaratory and injunctive relief to remedy Defendants' illegal and unconstitutional actions, policies, and practices.

72.

The requirements of Rules 23(a) and 23(b)(2) are satisfied by this class action.

### i.  Numerosity

73.

The information as to the size of the Class and the identity of the inmates who are in the Class is in the exclusive control of Defendants. On information and belief, the class encompasses thousands of inmates in the Virginia DOC, who are geographically dispersed throughout the Commonwealth of Virginia. The number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

### ii.  Commonality

74.

Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire class. The common answers that Plaintiffs seek are simple and will result in a common resolution for the class. These legal and factual questions include, but are not limited to:

a. Whether denying medical treatment—in any form—for inmates known to be infected with Hep C violates the governing standard of care;

b. Whether the treatment regimens utilizing the direct-acting antiviral drugs are the proper, necessary and standard course of treatment in the medical community;

c. Whether denial of treatment regimens utilizing the direct-acting antiviral drugs to the Class will cause injury to the Class members, including unnecessary pain and suffering, chronic illness, and death;

d. Whether Defendants' Hepatitis C current treatment policy, which denies necessary pharmaceutical treatment for inmates with Hepatitis C infections by following outdated and ineffective treatment regimens or not providing any treatment regimens at all, violates the Eighth Amendment to the U.S. Constitution and Article I, Sec. 9 of the Virginia Constitution; and

e. Whether the Constitution permits Defendants to knowingly deny Hep C treatment to any inmates who Defendants know are infected with Hep C.

### iii. Typicality

75.

Plaintiff's claims are typical of the members of the Class because Plaintiff and all Class Members were injured by the same wrongful policy and practices of

Defendants as described in this Complaint. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

### iv. Adequacy

76.

Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are contrary to or in conflict with those of the Class he seeks to represent.

77.

Plaintiff has retained competent counsel in both civil rights and class action litigation.

78.

Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Based on the anterior fact preceding this paragraph, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class Members as a whole and certification of the Class under Rule 23(b)(2) proper.

## COUNT I
## DEPRIVATION OF EIGHTH AMENDMENT RIGHT TO MEDICAL CARE
## PURSUANT TO 42 U.S.C § 1983
### (*Federal claim against all Defendants*)

79.

Plaintiff fully incorporates paragraphs 1 through 78, *and any paragraph this Court deems relevant*, as fully stated herein to support Plaintiff's Count I.

80.

Based on the incorporated paragraphs to support this Count I, Defendants' acts and omissions in failing to provide adequate medical care—including any medical care whatsoever—constitute deliberate indifference to the serious medical needs of prisoners infected with Hepatitis C, thereby establishing a violation of the Eighth Amendment of the United States Constitution. Consequently, Plaintiff is entitled to compensatory relief, ***individually*** against the Defendants in their individual capacities, while Plaintiff and all class members seek equitable relief as set forth in the below titled section, "Relief."

## COUNT II
## DEPRIVATION OF RIGHT NOT TO UNDERGO CRUEL AND UNUSUAL
## PUNISHMENT UNDER THE VIRGINIA CONSTITUTION
### (*State claim against all Defendants*)

81.

Plaintiff fully incorporates paragraphs 1 through 80, *and any paragraph this Court deems relevant*, as fully stated herein to support Plaintiff's Count II.

82.

Based on all the facts incorporated to support this Count II, Defendants'

acts and omissions in failing to provide adequate medical care—including any

medical care whatsoever—constitute deliberate indifference to the serious

medical needs of prisoners infected with Hepatitis C, thereby establishing a

violation of Article I, Sec. 9 of the Virginia Constitution and its prohibition against

the infliction of cruel punishments. Consequently, Plaintiff is entitled to

compensatory relief, ***individually*** against the Defendants in their individual

capacities, while Plaintiff and all class members seek equitable relief as set forth in

the below titled section, "Relief."

## COUNT III
## REQUEST FOR DECLARATORY/INJUNCTIVE RELIEF
(*Federal claim against all Defendants*)

83.

Plaintiff fully incorporates paragraphs 1 through 82, *and any paragraph this*

*Court deems relevant*, as fully stated herein to support Plaintiff's Count III.

84.

Based on all the facts incorporated to support this Count III, equitable relief

is proper because Plaintiff and Class Members will suffer irreparable harm if they

are forced to continue to endure the effects of chronic Hepatitis C without

treatment and because preventing people from sustaining a substantial risk of

death from an infection that is curable serves the public's interest. The equitable

relief that Plaintiff and all class members seek is set forth in the below titled section, "Relief."

**COUNT IV**
**ATTORNEY FEES**

**Based on the facts alleged in this Complaint,** Mr. Riggleman is entitled to attorney fees, under all applicable laws.

**<u>RELIEF</u>**

**WHEREFORE**, Mr. Riggleman respectfully requests the following relief:

(a) That process issue and service be had on each Defendant;

(b) For the named plaintiff and members of the plaintiff Class, a Declaratory Judgment that Defendants' current policy for Hepatitis C treatment violates the Eighth Amendment of the United States Constitution, and Article I, Sec. 9 of the Virginia Constitution;

(c) For the named plaintiff and members of the plaintiff Class, injunctive relief ordering that Defendants

    (i)     formulate and implement a Hep C treatment policy that meets the community standards of care for patients with Hep C,

    (ii)    that members of the Class be treated with medically necessary and the appropriate direct-acting antiviral drugs based on individual medical testing and medical evaluation regarding each individual's Hepatitis C status, and

(iii)    that members of the class receive ongoing monitoring and medical care per the standard of care for their individual level of liver fibrosis and cirrhosis, including but not limited to appropriate access to and evaluation by a hepatologist and assessment regarding their need for partial or full liver transplant;

(d) That Plaintiff recover all costs of this litigation;

(e) That Plaintiff receive compensatory damages; and

(f) That Plaintiff and all class members receive such other and further relief as the Court deems just and proper.

Respectfully submitted this 26th day of June 2017,

s/ Jessica Sherman-Stoltz
Jessica Sherman-Stoltz (VSB # 90172)

NEXUS CARIDADES ATTORNEYS, INC.
113 Mill Place Parkway, Suite 105A
Verona, VA 24482
540-466-3596/540-301-8158 FAX
jstoltz@nexuscaridades.com