CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

2/13/2018

JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez

DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
HARRISONBURG DIVISION

| | |
|---|---|
| TERRY A. RIGGLEMAN, | CASE NO. 5:17-cv-00063 |
| *Plaintiff*, | |
| v. | MEMORANDUM OPINION |
| HAROLD CLARKE AND MARK AMONETTE, | |
| *Defendants.* | JUDGE NORMAN K. MOON |

In this putative class action, a Virginia inmate claims he has been subjected to unconstitutional cruel and unusual punishment through the Virginia Department of Corrections' ("VDOC") alleged refusal to treat his serious medical affliction, namely, Hepatitis C ("Hep C"). The defendants—VDOC's Director, Harold Clarke, and its Chief Medical Director, Mark Amonette—have moved to dismiss. They posit the complaint does not make out a claim for direct and supervisory liability under the Constitution's Eighth Amendment, and that they are entitled to qualified immunity.

On the facts alleged, they are mistaken. The complaint contains ample facts demonstrating both the direct involvement of Defendants in the denial of medical treatment and Defendant Clarke's potential supervisory liability. Moreover, Defendants are not entitled to qualified immunity because no reasonable prison official could have believed that the law permits him to fail to afford medical treatment for a prisoner's known, severe, and potentially life-threatening disease.

**STANDARD OF REVIEW**

To determine whether a Complaint states a legal claim, the Court must accept as true all well-pled allegations, draw reasonable inferences in favor of the plaintiff, disregard the

complaint's legal conclusions and arguments, and ensure the plaintiff offers more than a formulaic recitation of the elements. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## FACTS AS ALLEGED[1]

Plaintiff Terry Riggleman ("Plaintiff") has been a prisoner at a VDOC facility since at least 2005. (Complaint ¶¶ 3, 41). He has Hepatitis C. (*Id*.).

## Hepatitis C

Hep C is viral infection of the liver that impairs its ability to assist with essential bodily functions and processes. (Complaint ¶ 6). Hep C can be either acute or chronic, but untreated acute Hep C often becomes chronic. (*Id*. ¶ 7). Chronic Hep C is a serious, long-term illness that causes liver cirrhosis and cancer; it is the most common cause of liver transplants. (*Id*. ¶ 8). It can also result in death. (*Id*.). Symptoms of Hep C-induced cirrhosis include swelling, bruising, jaundice, nausea, and memory or concentration difficulties. (*Id*. ¶ 9). "Every day without treatment increases the likelihood" of complications, ultimate liver failure, and death. (*Id*. ¶ 11). And a liver transplant is a painful, risky procedure that is rarely available to prisoners. (*Id*. ¶ 12).

Historically, effective and safe Hep C treatment was difficult. (Complaint ¶ 16). In recent years, however, the Food and Drug Administration has approved "direct-acting antiviral drugs," or DAADs, that mark a significant improvement in treatment. (*Id*. ¶ 17; *see id*. ¶¶ 18–20). For instance, in 2014 the FDA approved Harvoni, a once-daily pill that eliminated the need for other drugs, which "were largely responsible for the adverse and difficult side-effects of treating Hepatitis C." (*Id*. ¶¶ 21–22). Harvoni and other recent drugs have greater efficacy,

---

[1]    The complaint's allegations relating to the class are omitted because the certification issue is not relevant to this opinion. (*See* Complaint ¶¶ 68–78). This opinion also does not include various factual representations outside the complaint that were made at oral argument.

reduced treatment time, and can be administered orally rather than intravenously. (*Id*. ¶ 23). Cure rates with these drugs exceed 90% over a three-to-six-months period. (*Id*. ¶ 24).

The standard of care for Hep C is now well-established to include the latest DAADs. (Complaint ¶ 25). For instance, the CDC recommends them, and the Federal Bureau of Prisons, in 2014, adopted guidelines that incorporates their use. (*Id*.). Prison systems in California, Illinois, Washington, Wisconsin, Oregon, and New York have also begun incorporating DAADs into their Hep C treatment regimens. (*Id*. ¶ 26).

## Defendants

Defendant Harold Clarke is the Director of VDOC. (Complaint ¶ 4). He thus oversees operation and administration of Virginia's prisons, responsibilities which entail formulating policies and ensuring the provision of appropriate medical treatment to inmates. (*Id*. ¶ 4; *see*, *e.g.*, Va. Code 53.1-10 (listing powers and duties of Director)). State law grants the Director authority over health-related issues in Virginia's prisons (such as promulgating rules to preserve inmate health) and requires VDOC to provide medical treatment and services to prisoners. (*See* Complaint ¶ 4; Va. Code §§ 53.1-10(7) (addressing collection of data on health-related problems of the prison population), 53.1-32(A)).

Defendant Mark Amonette is VDOC's Chief Medical Director. (Complaint ¶ 5). He serves under Director Clarke's supervision. (*Id*.). He is responsible for knowledge of the laws and policies applicable to medical treatment of VDOC inmates. (*Id*.).

## Plaintiff's Condition

Plaintiff was diagnosed with Hep C in 2005 while in VDOC's custody. (Complaint ¶ 41). In 2008, he began suffering severe adnominal and liver pain. (*Id*. ¶ 42). After frequent complaints and pleas from family members for treatment, he was diagnosed with gall stones.

(*Id*. ¶ 43). His gall bladder was removed in March 2009, but his difficulties continued and his liver enzymes elevated. (*Id*. ¶¶ 44–45). Plaintiff asked the acting physician at his prison about possible Hep C treatment, but the doctor explained that Plaintiff did not then qualify for treatment and that possible complications were worse than his symptoms. (*Id*. ¶ 46). Plaintiff received this refrain from his prison doctors from 2009 to 2013. (*Id*. ¶ 47).

In 2013, Plaintiff learned of DAADs. (Complaint ¶ 48). He asked prison medical staff about receiving them and was told to be patient as VDOC developed a new treatment plan. (*Id*.). In September 2014, Plaintiff requested—but was denied—a copy of his medical file on the grounds that VDOC policy prevented inmates from receiving their entire file. (*Id*. ¶ 49). Soon thereafter, he reiterated his request for DAADs and was told that VDOC had not yet approved their use. (*Id*. ¶ 50). After multiple requests for copies of his lab reports assessing benchmarks for liver damage, medical staff told Plaintiff they did not have such labwork for him. (*Id*. ¶¶ 51–52). Plaintiff continued to voice his concerns about his liver condition, symptoms, and possible effects of pain mediation on his liver. (*Id*. ¶¶ 53–54).

Eventually, a doctor ordered labwork in January 2016 to check Plaintiff's liver enzyme levels. (Complaint ¶ 54). In November 2016, another doctor "finally submitted a Hep[] C referral request on behalf of Plaintiff to the VDOC medical Director, Defendant Amonette." (*Id*. ¶ 55). Defendant Amonette responded five days letter with a memo denying Plaintiff's Hep C request because he "does not meet the criteria for Hep C treatment at this time." (*Id*. ¶ 56). Plaintiff also received a second letter explaining that, after a review of Plaintiff's labs and status, he was ineligible for treatment. (*Id*. ¶ 57). In response to Plaintiff's request for an explanation of the criteria bearing on his denial, he was told simply that the matter was considered "on a case by case basis." (*Id*. ¶¶ 58–59). He was also told that the determination of Hep C treatment was

made by the VDOC Medical Director. (*Id*. ¶ 60). On March 21, 2017, Plaintiff was once again informed he did not meet the criteria for treatment. (*Id*. ¶ 66).

**Defendants' Actions, Policies, and Knowledge**

Thirty to forty percent of VDOC prisoners have Hep C. (Complaint ¶ 13). Decisions about who receives treatment are ultimately made by Defendants. (*Id*. ¶ 34). Defendant Clarke is aware that many inmates have Hep C but do not receive treatment for it. (*Id*. ¶¶ 4, 40). Indeed, Defendant Amonette has "reported on many occasion[s] to [Defendant] Clarke that VDOC inmates known to be infected by Hep C are not receiving treatment." (*Id*. ¶ 5). Defendant Clarke has "deliberately instituted, condoned, and ratified" a VDOC policy that results in inmates known to have Hep C receiving no treatment. (*Id*. ¶¶ 4–5). Defendants refuse to provide DAADs to Hep C inmates, they do not treat all inmates with the infection, and they maintain a policy that does not provide treatment as soon as an inmate is diagnosed with Hep C. (*Id*. ¶¶ 27–29). They implement treatment criteria not for medical purposes, but to delay the cost of Hep C treatment. (*Id*. ¶ 30). Indeed, there is no medical justification for failing to use DAADs in treating Hep C. (*Id*. ¶ 39).

As discussed above, Defendants have specifically denied Plaintiff's request for treatment, including his use of DAADs, despite their knowledge of his Hep C symptoms. (Complaint ¶¶ 32, 67). Consequently, Plaintiff has a substantially increased risk of liver disease, cirrhosis, cancer, and death. (*Id*. ¶ 38).

**ANALYSIS**

**I.      The Eighth Amendment Claim**

The complaint contains an Eighth Amendment claim based on Defendants' deliberate indifference to Plaintiff's serious medical needs. *See generally Estelle v. Gamble*, 429 U.S. 97

(1976).  A violation under this theory has both objective and subjective components. Objectively, the medical issue must be "sufficiently serious," meaning that it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  For purposes of this motion, no party argues that Plaintiff's Hep C is not a serious medical condition.

As to the second, subjective component, a defendant must be "deliberately indifferent," which occurs when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837; *see also id.* ("[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Defendants argue that the facts alleged do not support an Eighth Amendment violation by them.  They are incorrect, as the complaint contains sufficient facts to support an Eighth Amendment claim.

### A.     Director Clarke

Defendant Clarke asserts that the allegations do not indicate he was personally involved in denying Plaintiff treatment for Hep C.  (Dkt. 28 at 7).  But the facts permit an inference of his direct involvement, and in any event Plaintiff has alleged a claim of supervisory liability against him.

Clarke is the head of VDOC and is charged with formulating medical treatment policies. (Complaint ¶ 4).  He knows that Hep C prisoners do not receive treatment and that Defendant Amonette has failed to treat them.  (*Id.*).  Clarke has endorsed this course of inaction, *id.*, and Plaintiff is one such prisoner who Defendant Amonette has failed to treat.  (*Id.* ¶¶ 55–60).  From

Clarke's knowledge of non-treatment, his endorsement of Amonette's inaction, and Amonette's detailed failure to treat Plaintiff, it can be reasonably inferred that he is involved in the ongoing refusal to treat Plaintiff's Hep C. Indeed, it is alleged that both Defendants Clarke and Amonette "make the ultimate determination" whether a prisoner received Hep C treatment, and that they are specifically aware of Plaintiff's Hep C but continue to deny him treatment despite his symptoms. (*Id*. ¶¶ 34, 67; *see id*. ¶¶ 28–30 (describing Defendants' failure to implement treatment policies for all Hep C inmates and implementation of under-inclusive treatment criteria)). And even if those facts did not establish a direct claim against Defendant Clarke, a supervisory one against him exists.

Clarke contends that to be liable on that theory, he must have been either (1) "personally involved with a denial of treatment," (2) deliberately interfered with prison doctors' treatment, or (3) tacitly authorized or was indifferent to prison physicians' misconduct. (Dkt. 28 at 7 (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990))). Clarke states the complaint offers nothing more than "conclusory assertions," but that contention is both unfounded (as the facts surveyed above reveal) and ironic (because Clarke's argument is itself conclusory).

As highlighted above, Clarke is alleged to have specific knowledge of Plaintiff's Hep C and the failure to treat it, and to have endorsed a treatment policy which permits Plaintiff and others like him to receive no treatment at all. When a prison official in a position of responsibility has actual knowledge of a prisoner's serious medical condition but fails to secure treatment for it, he may be liable for an Eighth Amendment violation. *Jehovah v. Clarke*, 798 F.3d 169, 181–82 (4th Cir. 2015); *Jackson v. Lightsey*, 775 F.3d 170, 173, 179 (4th Cir. 2014).[2]

---

[2]     Clarke also cites *Miltier* for the proposition that prison officials may rely on medical staff opinions as to the proper course of treatment. But the allegation here is that Defendants have not provided or relied upon any medical opinion or course of treatment; instead, they simply refuse

The facts reveal, or at least support the inference, that Clarke: (1) knew VDOC, including

Defendant Amonette specifically, was not treating Plaintiff and many other Hep C prisoners; (2)

ratified and approved that course of inaction, and; (3) there was a link between Clarke's conduct

and Plaintiff's constitutional injury, *i.e.*, his failure to receive medical treatment. *See King v.*

*Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (reversing dismissal and holding that liberally

construed complaint "attempt[ed] to make a connection between [supervisor's] actions and

subsequent actions of his subordinate staff"); *see Wilkins v. Montgomery*, 751 F.3d 214, 226–27

(4th Cir. 2014) (setting forth standard).

### B.    Chief Medical Director Amonette

Defendant Amonette similarly argues that the facts do not show he violated the Eighth

Amendment. He argues, incredibly, that the facts merely evince "nothing more than a

disagreement regarding course of treatment." (Dkt. 28 at 9). The problem here, though, is that

there is no "course of treatment" at all:   Plaintiff is infected with a serious, painful, and

potentially life-threatening disease, yet—according to the complaint—he receives no treatment

whatsoever for it. *Iko v. Shreve*, 535 F.3d 225, 242–43 (4th Cir. 2008); *De-Lonta v. Angelone*,

330 F.3d 630, 635 (4th Cir. 2003). And Defendant Amonette is well aware of that fact because

he personally denied one of Plaintiff's treatment requests. Knowing that a prisoner has a serious

medical need yet refusing to provide any treatment for it is a quintessential deliberate

indifference claim. *E.g.*, *Jehovah*, 798 F.3d at 181–82; *Jackson*, 775 F.3d at 173, 179.

---

to treat Plaintiff's illness *at all* based on nebulous criteria and with no other apparent justification
other than cost cutting. (*See*, *e.g.*, Complaint ¶¶ 28–30, 34, 39, 55–60, 67; *Iko v. Shreve*, 535
F.3d 225, 242–43 (4th Cir. 2008); *De-Lonta v. Angelone*, 330 F.3d 630, 635 (4th Cir. 2003)).
    At oral argument, Clarke called attention to various tests run to assess Plaintiff's liver
function. The existence of these tests does not alter the analysis, because Plaintiff is suing for a
lack of medical *treatment* for his Hep C, not medical monitoring of it. His contention is that
Defendants are well aware of his disease yet refuse to take steps to mitigate or cure it.

## II.    Qualified Immunity

Defendants lodge a qualified immunity defense to the damages claims against them.  The

defense applies unless the right violated "was clearly established at the time of the challenged

conduct."  *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 195–96 (4th Cir. 2015) (holding

qualified immunity did not apply when defendant claims to be "unaware of [a] basic rule, well

established by our cases").  The Fourth Circuit has "repeatedly" held that:

> it is not required that a right violated already have been recognized by a court in a
> specific context before such right may be held 'clearly established' for purposes
> of qualified immunity.  Thus, the absence of a judicial decision holding under
> similar circumstances does not prevent a court from denying a qualified immunity
> defense. As the Supreme Court has emphasized, officials can still be on notice
> that their conduct violates established law even in novel factual circumstances.

*Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 734 (4th Cir. 2013) (internal citations and

quotations omitted); *e.g., Tobey v. Jones*, 706 F.3d 379, 392–93 & n.6 (4th Cir. 2013).  "The

burden of proof and persuasion with respect to a defense of qualified immunity rests on the

official asserting that defense."  *Meyers*, 713 F.3d at 731.  Defendants have not carried their

burden at this early stage.

They contend, largely in conclusory fashion, that their actions in "managing the treatment

of Hepatitis C offenders by establishing guidelines for treatment with criteria" were not a

violation of clearly established law.  (Dkt. 28 at 12).  This framing of the right at issue

misconceives the allegations at the heart of this case.  The crux of this lawsuit is that Defendants

haven't "managed" Plaintiff's Hep C at all, and their "guidelines for treatment with criteria" are

a sham (*i.e.*, nothing more than a vague, unexplained "case-by-case" determination that serves as

a guise for cost-cutting).

In sum, Defendants allegedly engaged in an abject failure to treat a serious disease and its

symptoms (both for the named plaintiff and numerous putative class members) that the

Defendants knew about. No reasonable official could think this willful refusal to treat a known, serious condition did not violate the Eighth Amendment. Indeed, the Fourth Circuit has repeatedly held that a prison official's total failure to treat a serious, known affliction is unconstitutional, and it has more than once reversed district courts for dismissing such claims at the pleading stage. *E.g.*, *Jehovah*, 798 F.3d at 174–75, 181–82 (reversing dismissal of deliberate indifference claim where abnormal test results and symptoms were "disregarded," "ignored," and not treated effectively); *Jackson*, 775 F.3d at 173, 179 (reversing dismissal of deliberate indifference claim against official who failed to effectuate treatment and testing for known heart condition); *Iko*, 535 F.3d at 242–43 (affirming denial of qualified immunity when it was "undisputed that Iko received *no* medical treatment whatsoever"); *De-Lonta*, 330 F.3d at 635 (reversing dismissal of deliberate indifference claim where inference existed that prisoner had "not received any treatment to suppress her compulsion to mutilate herself"); *see King*, 825 F.3d at 224 (reversing dismissal of supervisory liability claim where supervisor had administrative duties and authority over relevant decisions, was allegedly involved in those decisions, and the complaint made a connection between his actions and those of subordinates).

## III.  State Law Claim

Plaintiff also alleges a claim under Article 1, Section 9 of the Virginia Constitution, which prohibits "cruel and unusual punishments." Virginia courts permit causes of action directly from the Virginia Constitution only when the subject provision is "self-executing." *Gray v. Va. Sec. of Trans.*, 276 Va. 93, 103–04 (Va. 2008). A law is self-executing when it "expressly so declares" or "if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced." *Id*. at 103–04. Defendants argue that Article 1, Section 9 is not self-executing. *See Quigley v. McCabe*, No. 2:17CV70,

2017 WL 3821806, at *6 (E.D. Va. Aug. 30, 2017); *Quigley v. McCabe*, 91 Va. Cir. 397, at *2 (Norfolk City Cir. Ct. 2015).  Plaintiff's brief does not address this argument, *see generally* dkt. 37, and therefore the point is conceded.

## SUMMARY

For the foregoing reasons, the motion to dismiss will be denied in part and granted in part.  An appropriate order will issue.  The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to counsel.

Entered this ___13th___ day of February 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE