IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **TERRY A. RIGGLEMAN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No.: 5:17-cv-00063 |
| ) | |
| **HAROLD CLARKE**, et al., ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Mr. Riggleman brings this Reply to Defendants' Response in Opposition to Plaintiff's Second Brief in Support of a Motion for a Preliminary Injunction pursuant to 42 U.S.C. 1983 for the ongoing violation of his Constitutional rights under the Eighth Amendment of the U.S. Constitution to be free from cruel and unusual punishment and deliberate indifference to a known and serious medical need. In further support of Plaintiff's Motion, Plaintiff states as follows:

**ARGUMENT AND CITATION OF AUTHORITY**

**I.    A mandatory injunction is the appropriate remedy**

Defendants' Response in Opposition does nothing but misstate the record or obscure the facts clearly adduced at Mr. Riggleman's hearing. A mandatory injunction "should not be issued unless the facts and law clearly favor the

moving party", and as Plaintiff showed in his second brief, here, they do. <u>Taylor v. Freeman</u>, 34 F.3d 266, 270 n. 2 (4th Cir. 1994) (quoting <u>Martinez v. Mathews</u>, 544 F.2d 1233, 1243 (5th Cir. 1976)). <u>See</u> (ECF 92.)

The relief sought by Mr. Riggleman is not complicated, and it tracks the PLRA. The PLRA instructs that in the prison context, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief…" 18 U.S.C. §3626(a)(2). Here, in Terry Riggleman's Motion for a preliminary injunction, Plaintiff is not asking this Court to mandate Defendants tear up their Hep C Guidelines or to personally treat all the thousands of VDOC inmates with untreated Hep C; Plaintiff is merely asking this Court **to permit Terry Riggleman to be referred to VCU for an independent evaluation on whether he should be treated, and if so, to permit his treatment** or, alternatively, **to permit UVA, who has already recommended Riggleman's treatment, to treat Mr. Riggleman**. Indeed, this relief is the least intrusive on VDOC and extends no further than is necessary to correct the harm: denying Terry Riggleman any treatment whatsoever for his chronic Hepatitis C, (ECF 92-10, pp. 33, 40, 43-49, 101-02); (ECF 92-3); (ECF 92-5);

(ECF 92-6), despite the findings of UVA specialists, (ECF 92-10, pp. 41, 130-31), and Plaintiff's expert witness, Dr. Paul Gaglio, (ECF 92-10, pp. 33, 38-39).

I.      **Defendants misstate and distort the record to reach their conclusions[1]**

   A. **Plaintiff showed likelihood of success on the merits**

Defendants claim that having "a discussion about the cost" and the most "cost effective" way to provide treatment is not evidence of deliberate indifference. (ECF 93, p. 16.) Surely, by itself, that discussion would not suffice, but coupled with the estimated nearly 10,000 inmates with *untreated* chronic Hep C in VDOC prisons—whose treatment has been withheld based on the result of Defendants' "discussion" while only approximately 150 inmates are treated per year—that absolutely demonstrates deliberate indifference, (ECF 92-10, pp. 131-132; ECF 92-9), particularly to an inmate like Terry Riggleman who *has already been recommended for treatment by UVA*, (ECF 92-10, pp. 41, 130-31). Hoffer v. Jones, 290 F. Supp. 3d 1292, 1304 (N.D. Fla. 2017); Estelle v. Gamble, 429 U.S. 97, 101, 103 (1976).

Defendants scramble the facts and bizarrely reframe their refusal to permit Mr. Riggleman to be treated by UVA and claim that Dr. Amonette's "use of a specialist to manage these offenders was not a breach of the standard of care."

---

[1] In two of their "Conclusions of Law," Defendants erroneously state what "the Court concludes," (ECF 93 ¶¶ 82, 84), but this Court has made no such conclusions and these paragraphs should be immediately stricken.

(ECF 93, p. 17.) First, Dr. Amonette is not actually using this specialist (Dr. Sterling) to manage the treatment of most of VDOC's inmates with chronic Hep C—most don't even get a referral to Dr. Sterling at all—based on outdated Guidelines that are medically inaccurate. (ECF 92-10, pp. 33, 39, 99, 122-123, 128, 150.) As such, Dr. Amonette is not using Dr. Sterling to manage Mr. Riggleman's chronic Hep C, quite the opposite, he is actually refusing to permit Mr. Riggleman's disease to be managed by outside specialist Dr. Sterling. (ECF 92-10, pp. 123-25; ECF 92-4.) Further, he admitted that nearly all inmates who are deemed sick enough to get a referral to Dr. Sterling will be treated, (ECF 92-10, pp. 159, 163), and that VCU/Dr. Sterling are using the AASLD guidelines which state that everyone be treated regardless of fibrosis level. (Id. at p. 159). Second, outside specialists at UVA already evaluated Mr. Riggleman and recommended him for treatment, and Dr. Amonette is aware of this, but Dr. Amonette refuses to permit those outside specialists to treat Mr. Riggleman. (ECF 92-10, pp. 130-31.) Dr. Amonette actually admitted that UVA was probably using AASLD guidelines, and VDOC doesn't use those. (Id. at pp. 128, 130-31.) [2]

---

[2] Defendants also state that there are no correctional systems currently treating inmates with direct acting antiviral medications below the F-2 level, (ECF 93 ¶25), but this is not what Dr. Amonette said. Dr. Amonette merely testified that he was not aware of any, (ECF 92-10, p. 154 ln. 24), and beyond Dr. Amonette's "awareness," Defendants have not offered any evidence to support that claim.

Defendants represent that VDOC has made the decision to treat those with the most severe disease first and then progress to lower levels of disease severity, (ECF 93 ¶57), but that is not what VDOC's guidelines do. Rather, the Guidelines require an inmate's disease to rise in severity before they can even get a referral for evaluation by a hepatologist. (<u>Compare</u> ECF 92-10 at p. 157 <u>with</u> ECF 92-10 at p. 167.) <u>See also</u> <u>Id</u>. at pp. 153, 156-58, 189 (where Defendants' proffered expert from the FBOP testified that FBOP does not tell inmates that they have to get more advanced liver disease *before* they will be considered for treatment, and that all inmate-Hep C patients are considered candidates for treatment, stating, "[o]ur policy is not to wait until you get sick. That's very different.") Defendants do not refute Plaintiff's arguments regarding the vast difference between FBOP's guidelines and those of VDOC, likely because Defendants' arguments to the contrary have seen little favor in this Court. (<u>Reid v. Clarke</u>, 7:16-cv-00547-NKM-RSB, ECF 116 at *7.)

The bottom line is that these Defendants have knowingly refused to treat Mr. Riggleman's Hepatitis C during his 10 years of incarceration in VDOC, (ECF 92-10, pp. 33, 40, 43-49, 101-02); (ECF 92-3); (ECF 92-5); (ECF 92-6), despite his treatment being recommended by outside specialists at UVA, (ECF 92-10 at pp. 41, 130-31), and these Defendants are requiring Mr. Riggleman to have more advanced liver disease before they will even refer him to their preferred vender,

5 | P a g e
Case 5:17-cv-00063-NKM-JCH   Document 94   Filed 08/20/18   Page 5 of 10   Pageid#: 1598

VCU, for evaluation for treatment, (ECF 92-10, pp. 39, 41, 99, 101-02, 123-125, 128, 150); ECF 92-3E); (ECF 92-4), — and this is <u>not</u> based on sound medical judgment of Mr. Riggleman's need for Hep C medication, (ECF 92-10, pp. 23-24, 33, 49, 131, 184, 190); (ECF 92-7); (ECF 92-9). At the very least, Plaintiff has shown *likelihood* of success on the merits. <u>See</u> <u>Estelle</u>, 429 U.S. at 101, 103.

### B. Plaintiff showed likelihood of irreparable harm

Defendants claim that the evidence establishes that Mr. Riggleman's condition is "stable" and "has not changed" and "not likely to progress in the near future, if at all." Foremost, Defendants' reliance on Zawitz's testimony, who had "never heard of" chronic joint pain being exacerbated by chronic Hepatitis C, is tenuous at best, and this only further shows that Dr. Zawitz is not a Hepatitis expert (nor has any court determined whether Cook County Jail is following the medical standards of care). Further, Dr. Gaglio's testimony clarified that indeed Mr. Riggleman's liver disease has progressed from 2007 to 2017 (based on the most recent lab results) with the failure to treat his Hepatitis C, stating, "His liver disease is progressing before your eyes." (ECF 92-10, p. 83). Gaglio went on, "So as an example, in somebody with abnormal liver tests like his, and in someone with a previous history of alcohol abuse, like him, his liver disease will progress at a much more rapid rate than your standard Hep-C patient." <u>Id</u>. at pp. 84-85. Dr. Gaglio's conclusion, *made to a reasonable degree of*

*medical certainty*, that Mr. Riggleman's disease will only get worse the longer he is not treated, is hardly "pure speculation," see (ECF 93, p. 19). Perhaps that is why Defendants fail to mention it.

Defendants represent that Mr. Riggleman has never been told by a medical doctor that his sciatica and joint pain is a result of "being Hepatitis C positive." (ECF 93 ¶58.) But this flimsily-written sentence obscures the facts adduced at the hearing: according to medical doctor and hepatologist Dr. Gaglio, Mr. Riggleman's serious sciatica and joint pain, whatever their *initial* cause, is being chronically exacerbated due to the constant inflammation in his body caused by untreated chronic Hep C. (ECF 92-10, pp. 40, 44-**48,** 108-114); (92-5); (92-6.)

Defendants state that most individuals with Hepatitis C are asymptomatic, (ECF 93 ¶ 61), but even if this is true it only supports Mr. Riggleman's showing of irreparable harm because *he* is not asymptomatic: he has severe pain and fatigue as a result of his untreated Hep C. (ECF 92-10, pp. 40, 44-**48,** 108-114); (92-5); (92-6.) All the more reason why he should be treated, as was recommended by UVA. Furthermore, immediately after Dr. Kendig testified that most people are asymptomatic, the Court questioned Dr. Kendig about this, and Dr. Kendig testified that for most patients it gets worse over time, and the longer someone has the disease, the worse it gets. (ECF 92-10, p. 195 ln. 18-23.) And Dr. Gaglio

7 | P a g e

testified that *to a reasonable degree of medical certainty*, if Riggleman does not receive Hep C treatment, his symptoms will get worse. (ECF 92-10 10, pp. 48-49.)

Relevantly, "injunctive relief is appropriate 'to prevent a substantial risk of serious injury from ripening into actual harm.' " Thomas v. Bryant, 614 F.3d 1288, 1318 (11th Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 845 (1994). And "[i]n such circumstances, the irreparable-injury requirement may be satisfied by demonstrating a history of past misconduct, which gives rise to an inference that future injury is imminent." Id. See also Hoffer, 290 F. Supp. 3d at 1304. Here, Plaintiff has already crossed the threshold into actual harm, and Defendants' proposition that Plaintiff should have to wait until he suffers *more* actual harm is deliberate indifference in and of itself. See Estelle, 429 U.S. at 101, 103. Therefore, this Court's decision should be an easy one, and Defendants should not be permitted to knowingly allow Mr. Riggleman to suffer untreated any longer.

### C. Plaintiff showed that this injunction is in the public's interest and that the balance of the equities tips in Plaintiff's favor

Plaintiff has already established these points but takes this opportunity to correct Defendants' characterization of the effect of this preliminary injunction: granting this injunction would not "invade VDOC's administrative and medical decision-making," (ECF 93, p. 20), but provide the appropriate oversight to ensure that this agency, hell-bent on denying inmates access to medication for a

disease that requires that medication, is held accountable under the U.S. Constitution. Indeed, that is why we have federal courts.

## CONCLUSION

Based on the reasons stated herein and in Plaintiff's Brief (ECF 92) and based on the evidence adduced at the hearing on Plaintiff's Motion, this Court should GRANT Mr. Riggleman's Motion in its entirety.

Respectfully submitted this 20th day of August 2018,

/s/ MARIO WILLIAMS
Mario Williams (VSB #91955)

/s/ ANDREW R. TATE
Andrew R. Tate (GSB #518068)

**NEXUS DERECHOS HUMANOS ATTORNEYS, INC.**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442/ (703) 935-2453 FAX
mwilliams@ndhlawyers.com
atate@ndhlawyers.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

> Edward J. McNelis, III
> Elizabeth Martin Muldowney
> SANDS ANDERSON, PC
> 1111 East Main Street, Suite 2400
> Richmond, Virginia 23218-1998
> emcnelis@sandsanderson.com
> emuldowney@sandsanderson.com
> *Attorneys for Defendants Harold Clarke and Mark Amonette, MD*

Respectfully submitted this 20th day of August 2018,

/s/ MARIO WILLIAMS
Mario Williams (VSB #91955)

/s/ ANDREW R. TATE
Andrew R. Tate (GSB #518068)

**NEXUS DERECHOS HUMANOS ATTORNEYS, INC.**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442/ (703)935-2453 FAX
mwilliams@ndhlawyers.com
atate@ndhlawyers.com
*Counsel for Plaintiff*