CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
04/25/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TERRY A. RIGGLEMAN,<br><br>                *Plaintiff*,<br>v.<br><br>HAROLD CLARKE, *ET AL.*,<br><br>                *Defendants.* | CASE NO. 5:17-cv-00063<br><br>MEMORANDUM OPINION<br><br>SENIOR JUDGE NORMAN K. MOON |

The matter before the Court is Defendants Harold Clarke and Mark Amonette's Motion for Summary Judgment in which Defendants move to dismiss all claims remaining against them pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. 118). The matter has been fully briefed and the Court held a hearing. The matter is ripe for decision. For the reasons set out below, the Court will grant in part and deny in part the Defendants' motion for summary judgment. The Court finds that Defendants are entitled to qualified immunity and will dismiss Plaintiff's claims for monetary damages. Plaintiff's claims for declaratory and injunctive relief, however, will proceed before this Court.

### I.      PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed this action on June 26, 2017, against Defendants Harold Clarke ("Clarke") and Dr. Mark Amonette ("Amonette") in their official and individual capacities. In Count I of the Complaint, Plaintiff asserted a violation of the United States Constitution Eighth Amendment right to medical care with regard to his and other inmates' chronic Hepatitis C, pursuant to 42 U.S.C. § 1983. Count I sought compensatory relief for Plaintiff only against Defendants in their individual capacities while also seeking equitable relief for himself and the proposed class. (Dkt. 1 ¶ 80). In Count II, Plaintiff also sought damages for himself only while seeking equitable relief for himself

and the proposed class under the Virginia constitution. (*Id.* ¶ 82). In Count III Plaintiff sought declaratory/injunctive relief for himself and for the proposed class. (*Id.* ¶ 84). Finally, in Count IV, Plaintiff sought attorney fees "under all applicable laws." (*Id.* at 27). The Court subsequently dismissed Count II (the State law claim) with prejudice. (Dkt. 57).

Plaintiff alleges that in 2013, the United States Food and Drug Administration approved direct-acting antiviral ("DAA") drugs for the treatment of Hepatitis C with additional DAA drugs subsequently approved. These drugs are alleged to have very high cure rates with low side effects. (Dkt. 1 ¶¶ 17-24). Plaintiff alleges that the Defendants' denial of DAA drug treatment to himself and similarly situated inmates for their respective Hepatitis C infections violates the constitutional right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. (Dkt. 1 ¶ 13).

In addition to compensatory damages for himself, Plaintiff seeks a declaratory judgment that the Defendants' actions and omissions regarding inmates with chronic Hepatitis C violate the Eighth Amendment of the United States Constitution. Plaintiff also seeks injunctive relief requiring: (1) the Defendants to formulate and implement a Hepatitis C treatment policy that meets the community standards of care for patients with Hepatitis C; (2) that members of the proposed class be treated with medically necessary and appropriate DAA drugs based on individual medical testing and medical evaluation regarding each individual's Hepatitis C status; and (3) that members of the proposed class receive ongoing monitoring and medical care per the standard of care for their individual level of liver fibrosis and cirrhosis. (Dkt. 1 at 27-28).

Defendants move for summary judgment, seeking an order dismissing Plaintiff's claims, arguing that: (1) they are entitled to judgment as a matter of law with regard to Plaintiff's

constitutional claims; and (2) they are entitled to qualified immunity on the Plaintiff's claims for monetary damages.

## II. UNDISPUTED FACTS

Plaintiff disputes many of the "undisputed facts" asserted by Defendants. (*See* Dkt. 101, 129 at 4-23; dkt. 132 at 11-27).[1] Undisputed facts, with qualifications in some cases, are as follows:

The Plaintiff has been in the custody of the Virginia Department of Corrections ("VDOC") since 2006 and was diagnosed with Hepatitis C in 2005. Defendant Harold Clarke is the Director of the VDOC and has held that position since 2010. Plaintiff has had no contact or correspondence with Clarke regarding Plaintiff's treatment for Hepatitis C. Defendant Mark Amonette is a medical doctor who has worked in the VDOC since 2010 and has been the Chief Physician since March 2012. In that position, Amonette is the clinical supervisor of the physicians employed by the VDOC.

Pursuant to the VDOC guidelines for treatment of chronic Hepatitis C in effect, Diane Landauer, a VDOC contract medical doctor, saw Plaintiff for chronic care on an ongoing basis and did routine labs for monitoring of his Hepatitis C. On November 3, 2016, Dr. Landauer submitted a referral for Plaintiff to Amonette for evaluation of treatment for Hepatitis C. Amonette responded to the referral request and indicated the Plaintiff would not be approved for referral to the Virginia Commonwealth University ("VCU") Hepatitis C Telemedicine Clinic under the VDOC's then-existing criteria. Amonette directed Dr. Landauer to continue to follow the Plaintiff in the chronic care setting to determine if Plaintiff's indicators or any of his situations changed.

---

[1] Page number references are to the CM/ECF page number for the document in question.

VDOC has a long-term relationship with VCU, which has specialists in gastroenterology and hepatology, to treat Hepatitis C inmates referred by Amonette to VCU. In February 2015, VDOC decided to enter into a Memorandum of Agreement with VCU for the treatment of Hepatitis C inmates. The Agreement provided for the management and treatment of inmates in the VDOC with chronic Hepatitis C. The VCU Hepatitis C Telemedicine Clinic started in May or June 2015, initially with one nurse practitioner. Amonette approved inmates for referral to VCU's Hepatitis C Telemedicine Clinic for evaluation. Once an inmate is seen for evaluation, and no medical reason is determined to not treat the inmate, the inmate is prescribed treatment and a prescription is faxed to a pharmacy to be filled. Once the providers at VCU determine the treatment appropriate for a particular inmate referred to VCU, VDOC does not question the treatment plan.

Generally, as the level of fibrosis of the liver increases from Stage F0 (no fibrosis) to Stage F4 (cirrhosis), it does correlate with the underlying severity of liver disease. For Stages intermediary between Stages F0 and F4, Stage F1 is considered early scarring, Stage F2 is considered a scarring of a particular part of the liver, and Stage 3 is called bridging fibrosis or advanced scarring. From the beginning of the VCU Hepatitis C Telemedicine Clinic in June 2015 to December 2018, VCU treated approximately 500 inmates from VDOC who had chronic Hepatitis C.

Throughout 2015 to 2018, Plaintiff was seen by Dr. Landauer in chronic care for his Hepatitis C. Plaintiff was referred for a FibroScan which showed a level of F0/F1. The parties agree F0 indicates no fibrosis but disagree as to whether F0/F1 shows a non-fibrotic liver (Defendants) or mild hepatic fibrosis (Plaintiff). Under the then-existing VDOC guidelines, Plaintiff was not referred to VCU.

The Memorandum of Agreement between VDOC and VCU was modified in September 2018 and since January 2019 the Hepatitis C Telemedicine Clinic has been expanded pursuant to the modification. The current VDOC guidelines for the treatment of chronic Hepatitis C prioritize treatment based on disease severity, which indicates who is referred first to VCU and who are not. The current VDOC guidelines divide inmates into three priority levels. Currently, VDOC is treating Priority Levels 1 and 2, which includes those inmates at Stages F2, F3, and F4, and those inmates with certain medical conditions that can cause the liver disease to progress more rapidly, such as HIV. Plaintiff asserts that all chronic Hepatitis C inmates should be treated, with none denied treatment based on their fibrosis level.

The current VDOC guidelines are substantially similar to the corresponding Federal Bureau of Prisons guidelines although Plaintiff disputes this statement to the extent VDOC actually has a realistic commitment to treating all chronic Hepatitis C inmates in custody (i.e., will reach Priority Level 3 (inmates at Stage F0 or F1)). The Federal guidelines do not call for the immediate treatment of all inmates. The Plaintiff does not dispute that the VDOC guidelines are substantially similar to the Federal Bureau of Prisons guidelines but counters with the assertion that the Federal Bureau of Prisons guidelines were not recommended by the American Association for the Study of Liver Diseases, whose guidelines Plaintiff asserts establish the standard of medical care. VDOC has reached out to the University of Virginia in an effort to establish a second clinic similar to VCU's clinic but has so far been unsuccessful.

Since 2015, Amonette has approved approximately 809 inmates for evaluation at the VCU Hepatitis C Telemedicine Clinic. As of February 2019, approximately 2,610 inmates in the VDOC have been classified as chronic Hepatitis C positive although not all inmates have been tested. The VDOC has requested additional funding for Hepatitis C in the past 10 years. The VDOC

guidelines and the way treatment is carried out will continue to evolve although Plaintiff claims thousands of inmates with chronic Hepatitis C will go untreated under the current guidelines.

### III. LEGAL STANDARD

#### A. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a material fact "is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 250 (citation omitted).

The moving party seeking summary judgment bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-24; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or

conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).

**B.     Eighth Amendment Deliberate Indifference**

The Eighth Amendment proscribes prison officials from acting with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Jackson v. Sampson,* 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam). Thus, a plaintiff must satisfy two distinct elements to show that he is entitled to relief. First, he must provide evidence to show that he suffered from a sufficiently serious medical need. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008).

Second, a plaintiff must show the defendant acted with deliberate indifference to that serious medical need. A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106. Instead, to state a valid claim of deliberate indifference, the medical provider's actions must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Jackson,* 536 F. App'x at 357.

A delay in medical treatment may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104-05). In such cases, in addition to establishing that his medical need was objectively serious, a plaintiff also must show that the

7

delay in providing medical care caused him to suffer "substantial harm." *See Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008).

## IV. DISCUSSION

Defendants argue they are entitled to summary judgment as a matter of law because the Plaintiff cannot demonstrate that Defendants were deliberately indifferent to his serious medical needs. (Dkt. 129 at 24). Defendants also assert they are entitled to qualified immunity with respect to Plaintiff's claims for monetary damages. (*Id.* at 30). The Court will consider qualified immunity first.

### A. Qualified Immunity

Defendants assert they are entitled to summary judgment on Plaintiff's claims for monetary damages. (Dkt. 129 at 30). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). The burden of proof is on the party seeking qualified immunity. *Wilson v. Prince George's Cnty., Md.*, 893 F.3d 213, 219 (4th Cir. 2018).

In determining whether an official is entitled to summary judgment on the basis of qualified immunity, courts engage in a two-pronged inquiry. *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). The first prong asks whether the facts, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong asks whether the right was "clearly established" at the time of the defendant's conduct. *Id.* If the answer to either prong is "no," the official is entitled to qualified immunity. Thus, the district court may undertake the analysis by considering the

second prong first. *Pearson*, 555 U.S. at 236; *see Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015) (in appropriate cases, a court "need not reach both prongs of the analysis"). In this case, the Court will consider the second prong first.

In the second prong of the qualified immunity analysis, the "inquiry turns on the objective legal reasonableness of [the Defendants'] action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (internal quotation marks omitted). As a result, the Court looks not to whether the right allegedly violated was established "as a broad general proposition" but whether "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Raub*, 785 F.3d at 882.

"The Supreme Court has observed that the outcome of the 'clearly established' test depends largely upon the level of generality at which the relevant legal rule is to be identified." *Smith v. Gilchrist*, 749 F.3d 302, 308 (2014) (internal quotation marks omitted). In determining whether the law was clearly established at the time of the claimed violation, the court "ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose." *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).

In support of their claim of qualified immunity, Defendants cite *Cunningham v. Sessions*, No. 9:16-cv-1292-RMG, 2017 WL 2377838 (D.S.C. May 31, 2017), in which an inmate with the Federal Bureau of Prisons brought an action pro se seeking monetary damages as well as declaratory and injunctive relief, against various defendants, including Federal Bureau of Prisons ("FBOP") officials, the prison's clinical director, the Assistant Director of the Health Services Provision of FBOP, and a former FBOP Regional Medial Director. The plaintiff alleged that the FBOP instituted a policy which withheld from him DAA drugs. 2017 WL 2377838, at *2. The

9

court first reviewed the recent history of Hepatitis C, a review consistent with the record in this case: (1) the Center for Disease Control recognizes that chronic Hepatitis C is a serious medical condition which can result in long-term health problems; (2) since 2011, the Food and Drug Administration has approved new generation DAA drugs which have been highly effective with minimal side effects; and (3) in response to the effectiveness of DAA drugs, two professional associations of physicians specializing the in treatment of liver disease, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Diseases Society of America ("IDSA"), issued new joint recommendations for treatment in June 2016, recommending DAA drugs be administered to all patients with chronic Hepatitis C, with limited exceptions. 2017 WL 2377838, at *1.

The court in *Cunningham*, while allowing claims for declaratory and injunctive relief to proceed against certain defendants, dismissed all claims for monetary damages under the qualified immunity doctrine, finding that:

> In light of the rapidly evolving legal and medical developments in this area and the absence of any controlling Fourth Circuit or Supreme Court authority on the legal issue before the Court, there is no clearly established statutory or constitutional right *at this time* for inmates with chronic Hepatitis C to be treated with DAA drugs. Consequently, Defendants in this action are entitled to qualified immunity from any damage claims arising from the denial of DAA drugs to inmates. For this reasons, Plaintiff's *Bivens* claims against all Defendants are dismissed.

2017 WL 2377838, at *4 (emphasis in original). Another district court in the Fourth Circuit reached the same conclusion with respect to a state prison warden and a contractual health services provider. *See Redden v. Ballard*, No. 2:17-cv-01549, 2018 WL 4327288, at *8 (S.D.W. Va. July 17, 2018) (Report and Recommendation), *proposed findings and recommendation adopted*, 2018 WL 4323921 (S.D.W. Va. Sept. 10, 2018), *affirmed*, 748 F. App'x 545 (4th Cir. 2019) (unpublished per curiam).

Plaintiff argues that the approach, and result, in *Cunningham* is incorrect. Plaintiff asserts that the *Cunningham* court's defined level of specificity was too narrow in that it focused on whether there was a clearly established statutory or constitutional right for inmates with chronic Hepatitis C to be treated with DAA drugs. Plaintiff contends that, at the time of the decision in *Cunningham* there was only one set of medications the AASLD, IDSA, and the Centers for Disease Control recognized as appropriate for treating Hepatitis C, i.e., DAA drugs. Thus, Plaintiff concludes, the *Cunningham* court's definition of the right allegedly violated should have simply been "the constitutional right for inmates with chronic Hepatis C to be treated" without reference to the type of treatment. (Dkt. 132 at 43). Plaintiff also contends that the AASLD pronounced that all persons diagnosed with chronic Hepatitis C must be treated with DAA drugs as early as possible. (Dkt. 132 at 43). Plaintiff also argues that the appropriate level of specificity of the constitutional right should be "the right for inmates with chronic Hepatitis C to be treated in order to be free from the substantial risk of serious harm in the form of irreversible liver damage, chronic pain and fatigue, gastrointestinal complications, liver cancer, and death." (Dkt. 132 at 44). Plaintiff also argues that the general constitutional rules in *Estelle* and *Farmer* regarding inmate medical care apply with "obvious clarity" to the specific conduct of Clarke and Amonette here. (Dkt. 132 at 44).

To be sure, a right need not be recognized by a court in a specific factual context before such right may be considered "clearly established" for purposes of qualified immunity. *Wilson*, 893 F.3d at 221. "However, the Supreme Court has emphasized in recent years that courts are not to define clearly established law at a high level of generality." *Id.* (internal quotation marks omitted). Thus, while a case directly on point is not required for a court to conclude that the law was clearly established, "existing precedent must have placed the statutory or constitutional

11

question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Thus, "in gray areas, where the law is unsettled or murky, qualified immunity affords protection to a government official who takes an action that is not clearly forbidden – even if the action is later deemed wrongful." *Smith*, 749 F.3d at 307.

The Court finds that the rapidly evolving legal and medical developments recognized by the courts in *Cunningham* and *Redden* apply in this case. Courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (citation omitted). When first published, the AASLD guidelines contained a prioritization system. (Dkt. 92-10 at 62, 177). Even the revised AASLD guidance notes that "in certain settings there remain factors that impact access to medications and the ability to deliver them to patients. In these settings, clinicians may still need to decide which patients should be treated first." (Dkt. 132-16 at 396). One such setting included the housing of incarcerated persons. (Dkt. 132-16 at 402-03). Further, although Amonette did not refer Plaintiff to VCU for treatment with DAA drugs, pursuant to the then-existing VDOC guidelines for treatment of Hepatitis C, the Plaintiff was seen by Dr. Landauer for chronic care of his Hepatitis C on an ongoing basis and for routine labs, which included calculations submitted for review. (Dkt. 119-4 at 12:11-19).

In this case, the Court has considered the "particular circumstances" faced by Defendants. *See Plumhoff*, 572 U.S. at 779. For a constitutional right to be clearly established, its contours must be sufficient that "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Raub*, 785 F.3d at 882. In light of the evolving circumstances faced by Defendants and the lack of legal authority making the unlawfulness of Defendants' course of

12

action in this case apparent, Defendants would not have been on notice of a "clearly established" right of Plaintiff and those similarly situated to be treated with DAAs at the relevant time. The Court finds that Defendants have carried their burden of proof and persuasion and are entitled to qualified immunity.

The Court, therefore, will grant Defendants' motion for summary judgment to the extent Defendants seek qualified immunity with respect to monetary damages against Defendants individually.

**B.     Claims for Injunctive and Declaratory Relief**

Plaintiff also seeks, on his behalf and that of a proposed class, injunctive and declaratory relief regarding VDOC's Hepatitis C policy, alleging unconstitutional delayed DAA drug curative treatment to himself and others similarly situated. A finding of qualified immunity extends only to Defendants' liability for damages. *Raub*, 785 F.3d at 885. It is generally permissible for a § 1983 plaintiff to sue state officials in their official capacities for declaratory and prospective injunctive relief to remedy an ongoing violation of federal law. *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)).

The Court concludes that Plaintiff has alleged and offered evidence that the Defendants have refused to provide him with curative therapy and that he has and will continue to suffer from chronic Hepatitis C, which may lead to serious consequences, including possible liver failure and liver cancer, without injunctive relief. There remain genuine disputes as to material fact regarding the appropriate standard of medical care, whether the challenged conduct caused Plaintiff injury and if any injury was serious, and Clarke's role in promulgation of the VDOC guidelines. Defendants, in their official capacities, are not entitled to summary judgment on Plaintiff's injunctive and declaratory claims.

## V. CONCLUSION

For the reasons set out above, the Court finds that Defendants Clarke and Amonette are entitled to qualified immunity as to Plaintiff's claims for monetary damages and those claims should be dismissed. The Court finds, however, that Plaintiff's claims for declaratory and injunctive relief should not be dismissed. A separate order will be entered.

The Clerk of the Court is directed to serve a copy of this Memorandum Opinion and accompanying Order on counsel for the parties.

Entered this 25th day of April, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE