**RECORD NUMBER:**

# United States Court of Appeals

*for the*

# Fourth Circuit

TERRY RIGGLEMAN,

*Plaintiff/Petitioner,*

– v. –

HAROLD CLARKE and MARK AMONETTE,

*Defendants/Respondents.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT HARRISONBURG

## PETITION FOR PERMISSION TO APPEAL

MARIO B. WILLIAMS
ANDREW R. TATE
NEXUS DERECHOS HUMANOS
ATTORNEYS, INC.
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442

*Counsel for Petitioner*

 COUNSEL PRESS ● VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____          Caption:  Riggleman v. Harold Clark and Mark Amonette

Pursuant to FRAP 26.1 and Local Rule 26.1,

Terry Riggleman
(name of party/amicus)

_____

 who is _____ Petitioner _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?      ☐ YES ☑ NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐ YES ☑ NO
        If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Mario Williams _____   Date: _____05/07/2019_____

Counsel for: Terry Riggleman _____

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____5/7/2019_____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Laura Elizabeth Maughan
Office of the Attorney General - Richmond
202 North Ninth Street, Richmond, VA 23219
lmaughan@oag.state.va.us

Meredith M. Haynes
Williams Mullen, Williams Mullen Center
200 South 10th Street, Suite 1600
Richmond, VA 23219
mhaynes@williamsmullen.com

Edward J. McNelis, III
Elizabeth M. Muldowney
Sands Anderson, PC
1111 East Main Street, Suite 2400
P.O. Box 1998
Richmond, Virginia 23218-1998
emcnelis@sandsanderson.com
emuldowney@sandsanderson.com

/s/ Mario Williams _____
(signature)

_____5/7/2019_____
(date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..........................................................................ii

PETITION TO APPEAL THE DENIAL OF CLASS
     CERTIFICATION................................................................. 1

QUESTION PRESENTED ........................................................................ 1

KEY FACTS ......................................................................................... 1

APPLICABLE LEGAL STANDARDS ....................................................... 5

A.   The Standard for Appealing the Denial of Class
     Certification............................................................................. 5

B.   The Standard for Analyzing Adequacy of Counsel and its
     bearing on Class Certification ................................................. 8

ARGUMENT AND CITATION TO AUTHORITY .................................... 11

I.   Problems with the District Court's Decision................................. 11

   A.   The District Court's Erroneous and Acontextual Use
       of Other Cases of Plaintiff's Counsel.................................. 12

      1.   Cashion v. Lee .................................................... 12

      2.   Hixson v. Hutcheson .......................................... 14

   B.   The District Court relied on cases that are starkly
       distinct from the facts of this case...................................... 16

II.   Why This Court Should Grant Review.......................................... 18

   A.   Regardless of the five factors, special circumstances
       warrant immediate review .................................................. 19

   B.   Analysis under the five Prado-Steiman factors.................... 20

      1.   The court's denial of class certification at the
         eve of trial is a "death knell" decision........................... 20

      2.   The District Court's decision is substantially
         weak.............................................................................. 22

3.    Resolving an unsettled legal question ......................... 23

4.    The nature and status of this litigation lends toward immediate review ............................................. 25

5.    The effect of future events beg appellate review of this decision ............................................................... 27

CONCLUSION ........................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Ademiluyi v. PennyMac Mortg. Inv. Trudt Holdings,
No. CIV.A. ELH-12-0752, 2015 WL 575362 (D. Md. Feb.
10, 2015)............................................................................... 17

Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,
568 U.S. 455 (2013) ............................................................ 1

Bell v. Brockett,
No. 18-1149, 2019 WL 1848525 (4th Cir. Apr. 25, 2019)........... 6, 18

Berry v. Schulman,
807 F.3d 600 (4th Cir. 2015) ............................................. 9

Blair v. Equifax Check Servs., Inc.,
181 F.3d 832 (7th Cir. 1999) ........................................... 20

Brown v. Nucor Corp.,
576 F.3d 149 (4th Cir. 2009) ........................................... 8

Buffkin v. Hooks,
No. 1:18-CV-502, 2019 WL 1282785 (M.D.N.C. Mar. 20,
2019)............................................................................... 10-11

Bulmash v. Travelers Indem. Co.,
257 F.R.D. 84 (D. Md. 2009) ........................................... 3

Chimenti v. Wetzel,
No. CV 15-3333, 2018 WL 2388665 (E.D. Pa. May 24, 2018) ....... 10

Davis v. White,
No. 4:16-CV-18, 2017 WL 6273488 (E.D. Va. Dec. 8, 2017),
aff'd sub nom. Davis v. Samuel I. White, P.C.,
748 F. App'x 509 (4th Cir. 2019)............................................ 16, 17

EQT Prod. Co. v. Adair,
764 F.3d 347 (4th Cir. 2014) ........................................... 6

Graham v. Parker,
    No. 3-16-cv-01954, 2017 WL 1737871 (M.D. Tenn. May 4,
    2017) ............................................................................................ 10

Haywood v. Barnes,
    109 F.R.D. 568 (E.D.N.C. 1986) ...................................................... 9

Hixson v. Hutcheson et al.,
    5:17-cv-32 ......................................................................... 14, 15, 16

Hoffer v. Jones,
    323 F.R.D. 694, 698 (N.D. Fla. 2017) ............................................ 10

Hunter v. Earthgrains Co. Bakery,
    281 F.3d 144 (4th Cir. 2002) .......................................................... 14

In re Mills Corp. Securities Litigation,
    257 F.R.D. 101 (E.D. Va. 2009) ....................................................... 9

In re Safety-Kleen Corp. Bondholders Litigation,
    2004 WL 3115870 (D.S.C. 2004) ................................................. 9-10

Lienhart v. Dryvit Sys., Inc.,
    255 F.3d 138 (4th Cir. 2001) .................................................. passim

Ogunde v. Prison Health Servs., Inc.,
    274 Va. 55 (2007) ....................................................................... 14-15

Pickett v. Iowa Beef Processors,
    209 F.3d 1276 (11th Cir. 2000) ...................................................... 22

Postawko v. Missouri Dep't of Corr.,
    No. 2:16-CV-04219-NKL, 2017 WL 3185155 (W.D. Mo. July
    26, 2017) ....................................................................................... 10

Prado–Steiman v. Bush,
    221 F.3d 1266 (11th Cir. 2000) .............................................. passim

Reid v. Clarke, et al.,
    7:16-cv-547, ECF 116 .................................................................... 23

Shahriar v. Smith & Wollensky Rest. Grp., Inc.,
    659 F.3d 234 (2d Cir. 2011) .......................................................... 5, 6

Stafford v. Carter,
> No. 1:17-CV-00289-JMS-MJD, 2018 WL 1140388 (S.D. Ind. Mar. 2, 2018) ................................................................................. 10

Stirman v. Exxon Corp.,
> 280 F.3d 554 (5th Cir. 2002) ......................................................... 9

Westberry v. Gislaved Gummi AB,
> 178 F.3d 257 (4th Cir. 1999) ......................................................... 6

Yaffe v. Powers,
> 454 F.2d 1362 (1st Cir. 1972) ...................................................... 21

**Statutes & Other Authorities:**

28 U.S.C.A. § 1292(e) ......................................................................... 5

42 U.S.C. § 1983 ............................................................................... 13

Fed. R. Civ. P. 11(b)(2) .................................................................... 13

Fed. R. Civ. P. 23 ...................................................................... passim

Va. Code § 8.01-243.2 ................................................................ 12, 13

U.S. Const. Amend. VIII ................................................................ 3, 14

1 Newberg on Class Actions § 3:81 (5th ed.) ................................. 8-9, 23

1 Newberg on Class Actions § 3:87 (5th ed.) ................................ 11, 17

Manual for Complex Litigation, Fourth, § 21.272 ........................... 11, 25

## PETITION TO APPEAL THE DENIAL OF CLASS CERTIFICATION

NOW COMES Terry Riggleman, Plaintiff/Petitioner, and files this

Petition for Permission to Appeal the District Court's Order Denying

Class Certification.

## QUESTION PRESENTED

**Whether the District Court abused its discretion by denying class certification—based solely on an inadequacy of counsel analysis, that principally relied upon many factually erroneous, acontextual statements about Plaintiff's counsel with respect to cases the district judge never presided over-- while ignoring the diligence, reputation, and results obtained by that same counsel in the case at bar—where the adequacy of counsel was not challenged and Defendants conceded to class certification?**

## KEY FACTS

The District Court's Opinion denying Petitioner class certification

solely on a fatally flawed understanding and application of the

adequacy of class counsel requirement of Rule 23 departs so drastically

from the prevailing standard of review, that far from being a rigorous

analysis as required by precedent, the District Court's Opinion

represents a quintessential abuse of discretion. Amgen Inc. v.

Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 465–66 (2013)

(stating "court's class-certification analysis must be "rigorous"…."). The following points are fundamental in considering Petitioner's Petition:

1. Foremost, during this case, Defendants invited Plaintiff to participate in modifying the Virginia Department of Corrections (VDOC)'s Hepatitis C protocol that existed prior to Plaintiff's lawsuit, and in April 2019 Defendants modified their Hepatitis C guidelines to include counsel's verifiable written recommendations (developed in consult with Plaintiff's nationally renowned Hepatitis C expert) such as giving FibroScans to all inmates with confirmed chronic Hepatitis C— a modification that Plaintiff diligently sought. That is an enormous achievement gained by counsel prior to any determination on certification of the putative class;

2. In this case, the District Court actually denied summary judgment based on the same reasoning provided by Plaintiff's counsel—and Plaintiff's counsel will be conducting a trial on Plaintiff's individual claims for injunctive relief;

3. Defendants in this case represented on record at the December 20, 2018 hearing on class certification that, following rigorous

briefing by Plaintiff's counsel and after months of fighting class certification, they ***consented*** to class certification;

4. At the same hearing, Defendants represented on record that they did not challenge the adequacy of Plaintiff's counsel;

5. Relevant to the failure to mention that Plaintiff's counsel defeated summary judgement in this case, the District Court did not provide any meaningful discussion of counsel's significant experience with respect to the actual claims at issue in this case (prison litigation, Eighth Amendment claims)—zero substantive discussion on the issue, which the prevailing standard contemplates, despite two declarations submitted to the District Court that lay out counsel's relevant experience (See ECFs 113, 114, Declarations);

6. During this case, Plaintiff conducted 14 depositions. See Bulmash v. Travelers Indem. Co., 257 F.R.D. 84, 89 (D. Md. 2009) ("[t]he determination of adequacy of representation focuses on… class counsel's willingness to prosecute the action….");

7. During this case Plaintiff fought for and **secured approximately 10,000 pages** of electronically stored information (ESI) discovery, and when there was a question as to whether Plaintiff had diligently pursued ESI, Plaintiff filed fifty pages worth of emails (ECF 69), causing the magistrate judge to state that it was clear that Plaintiff had not been "sitting on his hands" See Id.;

8. During this case, Plaintiff had one of the foremost experts in the world on Hepatitis C testify before the District Court as well as provide an expert opinion and recommendations that were adopted in part by Defendants, along with paying thousands of dollars for ESI discovery. Id.; (See ECF 92-7.)

Despite the above, the District Court's Opinion violated the controlling standard regarding adequacy of counsel by conspicuously failing to meaningfully discuss Plaintiff's counsel's diligence *in this case*, a requirement when analyzing adequacy of class counsel. Compare Fed. R. Civ. P. 23(g)(1)(A) with ECF 145.

## APPLICABLE LEGAL STANDARDS

### A. The Standard for Appealing the Denial of Class Certification

While "[r]outine interlocutory review of class certifications is simply not feasible as a practical matter . . . Rule 23(f) was enacted by the Supreme Court to permit such appeals . . .." <u>Lienhart v. Dryvit Sys., Inc.</u>, 255 F.3d 138, 145 (4th Cir. 2001) (citing 28 U.S.C.A. § 1292(e)).

Rule 23(f) provides:

> A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule . . . A party must file a petition for permission to appeal with the circuit clerk within 14 days after the order is entered.

Fed. R. Civ. P. 23(f). According to the committee notes, courts of appeals have "unfettered discretion" to authorize an appeal under Rule 23(f): "Permission to appeal may be granted or denied on the basis of *any consideration that the court of appeals finds persuasive*." Fed.R.Civ.P. 23(f) committee notes (emphasis added).

The appellate court reviews class certification rulings for abuse of discretion, and the appellate court reviews *de novo* the district court's conclusions of law that informed its decision to deny class certification. <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 251 (2d

Cir. 2011). A district court has abused its discretion if its decision "is guided by erroneous legal principles" or "rests upon a clearly erroneous factual finding." W<u>estberry v. Gislaved Gummi AB</u>, 178 F.3d 257, 261 (4th Cir. 1999). A district court abuses its discretion regarding class certification when it *materially misapplies the requirements of Rule 23*. <u>EQT Prod. Co. v. Adair</u>, 764 F.3d 347, 357 (4th Cir. 2014). After reviewing the record and the reasons the district court offered for its decision, a decision should be reversed for abuse of discretion if the Court of Appeals forms "a definite and firm conviction that the court below committed *a clear error of judgment* in the conclusion it reached upon a weighing of the relevant factors." <u>Westberry</u>, 178 F.3d at 261 (emphasis added).

This Court has noted that "[f]ailure to comply with the requirements of Rule 23 in the vast majority of cases render certification fatally defective." <u>Bell v. Brockett</u>, No. 18-1149, 2019 WL 1848525, at *8 (4th Cir. Apr. 25, 2019). Keeping that in mind, an appellate court is "noticeably *less* deferential ... when [the district] court has *denied* class status than when it has certified a class." <u>Shahriar</u>, 659 F.3d at 250 (emphasis added).

This Court "adopted, with some elaboration," the five-factor

Prado–Steiman test for determining when to grant a Rule 23(f) petition.

Lienhart, 255 F.3d at 146. Accordingly, this Court may consider:

(1) whether the certification ruling is likely dispositive of the litigation (a "death knell" ruling);

(2) whether the district court's certification decision contains a substantial weakness;

(3) whether the appeal will permit the resolution of an unsettled legal question of general importance;

(4) the nature and status of the litigation before the district court; and

(5) the likelihood that future events will make appellate review more or less appropriate.

Lienhart, 255 F.3d at 145 (citing Prado–Steiman v. Bush, 221 F.3d 1266, 1274-76 (11th Cir. 2000)).

The "authority to accept Rule 23(f) petitions is highly discretionary," and despite these factors, "where a district court's certification decision is *manifestly erroneous* and virtually certain to be reversed on appeal, the issues involved *need not* be of "general importance," *nor* must the certification decision constitute a "death knell" for the litigation for the Court of Appeals to grant review. Lienhart, 255 F.3d at 145. (emphasis added).

This Court's decisions regarding Rule 23 appeals "have specifically acknowledged that there is no abuse of discretion, as a matter of law, when a *reasonable* jurist could have made the decision at issue based on the evidence in the record." Brown v. Nucor Corp., 576 F.3d 149, 161 (4th Cir. 2009), as amended (Oct. 8, 2009) (dissenting) (emphasis added). Here, the Petitioner will show, with no hyperbole, that the Honorable District Court Judge was patently *unreasonable*, and it is written all over his Opinion.

## B. The Standard for Analyzing Adequacy of Counsel and its bearing on Class Certification

Rule 23(g)(1)(A) lists the four factors that the court *must* consider in appointing class counsel. These are:

1. the work counsel has done in identifying or investigating potential claims in the potential action;

2. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

3. counsel's knowledge of the applicable law; and

4. the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The court may consider other factors as well, including those referenced in the body of case law regarding Rule 23(a)(4). 1 Newberg

on Class Actions § 3:81 (5th ed.) (citing Rule 23(g)(1)(B)). Class

certification is appropriate when "the representative parties will fairly

and adequately protect the interests of the class." Berry v. Schulman,

807 F.3d 600, 608-09 (4th Cir. 2015) (citing Rule 23(a)(4)). Regarding

class counsel, this inquiry focuses on "the qualifications, experience and

conduct of plaintiffs' counsel." Haywood v. Barnes, 109 F.R.D. 568, 578

(E.D.N.C. 1986) (citations omitted).

 In evaluating the adequacy of counsel requirement, a court "must

consider the zeal and competence of the representatives' counsel and

the willingness and ability of the representatives to take an active role

in and control the litigation and to protect the interests of absentees."

Stirman v. Exxon Corp., 280 F.3d 554, 563 (5th Cir. 2002) (citations and

quotation marks omitted).

 While Rule 23(g) calls for an affirmative showing of adequacy of

counsel, no particular degree of evidentiary burden is imposed. See In

re Mills Corp. Securities Litigation, 257 F.R.D. 101, 104, (E.D. Va. 2009)

(applying a preponderance of evidence standard to Rule 23 inquiries,

given this Court's lack of specification and other authorities' adoption of

this standard); In re Safety-Kleen Corp. Bondholders Litigation, 2004

WL 3115870, *2 (D.S.C. 2004) (rejecting the burden of clear and convincing evidence and instead imposing a burden of preponderance for Rule 23 requirements).

If a district court was permitted to cherry-pick cases of every attorney who sought class counsel appointment and make determinations of counsel's qualifications without reasonable inquiry—and then deny certification after a year of fruitful discovery and hard-fought policy changes—then any attorney could unlawfully be deemed inadequate.

Important to this Court's consideration of this Petition, Petitioner notes that *no* district court has denied class certification on the issue of Hepatitis C treatment in correctional facilities where the named plaintiffs were represented by counsel. See Graham v. Parker, No. 3-16-cv-01954, 2017 WL 1737871 (M.D. Tenn. May 4, 2017); Stafford v. Carter, No. 1:17-CV-00289-JMS-MJD, 2018 WL 1140388 (S.D. Ind. Mar. 2, 2018); Hoffer v. Jones, 323 F.R.D. 694, 698 (N.D. Fla. 2017); Chimenti v. Wetzel, No. CV 15-3333, 2018 WL 2388665, at *5 (E.D. Pa. May 24, 2018); Postawko v. Missouri Dep't of Corr., No. 2:16-CV-04219-NKL, 2017 WL 3185155, at *5 (W.D. Mo. July 26, 2017); Buffkin v.

<u>Hooks</u>, No. 1:18-CV-502, 2019 WL 1282785, at *12 (M.D.N.C. Mar. 20, 2019).

Finally, if the class appears otherwise certifiable, "refusal to certify *solely* on a finding of inadequate representation is very problematic." Manual for Complex Litigation, Fourth, § 21.272 (emphasis added). Denying certification outright based on adequacy of counsel "is often the least desirable remedy given the interests of the class in vindicating their claims." 1 Newberg on Class Actions § 3:87 (5th ed.)

## ARGUMENT AND CITATION TO AUTHORITY

## I.    Problems with the District Court's Decision

From this point forward, counsel will first briefly cover the bewildering reliance of the District Court Judge on cases over which he never presided, to erroneously state and imply, *inter alia*, character-impugning conduct such as committing malpractice. (<u>See</u> ECF 151, Objection for a lengthier discussion if so desired on this subject.) Then, counsel will discuss the District Court's use of cases that are sizably different from the facts of this case. After that, counsel will discuss the

<u>Prado-Steiman</u> standard to demonstrate the reasons counsel urges this Court to grant this Petition.

### A. <u>The District Court's Erroneous and Acontextual Use of Other Cases of Plaintiff's Counsel</u>

#### 1. <u>Cashion v. Lee</u>

The District Court brought up the Cashion case for one purpose: to suggest that Plaintiff's counsel committed malpractice by missing a client's statute of limitations—which is patently and demonstrably false. In Cashion, the client submitted a legal referral on *January 24, 2017* for a series of incidents that occurred at a jail in which Mr. Cashion was denied his psychotropic medication—incidents that occurred between *October 15, 2015* through *December 11, 2015*. That is, Mr. Cashion came to Plaintiff's counsel *over one year after the events occurred*, and therefore *after* the one-year statute of limitations had run on his state law claims under Va. Code § 8.01-243.2. Plaintiff's *counsel* did not "dally," rather plaintiff, Mr. Cashion, a homeless man with schizophrenia, did not seek out Plaintiff's counsel until after the one-year SOL had run. If the District Court had asked, while it would be unusual, Plaintiff's counsel would have been obliged explain those

circumstances. The District Court did not ask, but instead assumed and insinuated Plaintiff's counsel committed malpractice.

Far from dallying, Plaintiff's Counsel filed Mr. Cashion's lawsuit on January 31, 2017 (**one week after receiving the referral**) and included two § 1983 claims and one state law claim. Defendant asserted the SOL defense, and Plaintiff had his Constitutional challenge to Va. Code § 8.01-243.2 as a violation of Equal Protection waiting.

Plaintiff's counsel found abhorrent Va. Code § 8.01-243.2, a law that shortens the two-year statute of limitations to one year for free, non-incarcerated people to assert state law claims for personal injury *merely because their injury occurred while they were incarcerated*. Plaintiff's counsel should be commended for asserting this Constitutional challenge and attempting to extend, modify or reverse existing law or establish new law. See Fed. R. Civ. P. 11(b)(2). Instead, not only did the District Court insinuate Plaintiff's counsel was derelict in timely filing Mr. Cashion's suit, which is patently false, but the court completely ignored that Plaintiff's counsel went *above and beyond* in their fight for Mr. Cashion—and the rights of all persons injured while incarcerated in Virginia—by challenging the law. That is zealous

advocacy in an attempt to change the law and that type of advocacy is encouraged by this Court. See Hunter v. Earthgrains Co. Bakery, 281 F.3d 144, 153 (4th Cir. 2002).

**2. Hixson v. Hutcheson**

Regarding Hixson, this Court again took a swipe at Plaintiff's counsel without a reasonable investigation into the circumstances of the case. In the Hixson case, plaintiff pled a breach of contract claim against Southern Health Partners (SHP), a private health contractor that had contracted with Rockingham County to provide health care to the inmates of the local jail. (Plaintiff also asserted Eighth Amendment and medical malpractice claims). The basis of Mr. Hixson's contract theory was a 2007 Virginia Supreme Court case that marked a significant win for prisoner's rights advocates. The Virginia Supreme Court found that a contract between Prison Health Services (PHS) and VDOC stated that its purpose was to "provide cost effective, quality inmate health care services for up to approximately 6,000 inmates," and set forth the scope of health care services to be provided to the inmates. Ogunde v. Prison Health Servs., Inc., 274 Va. 55, 63 (2007). The court found that because the plaintiff, Ogunde, was one of these inmates and

PHS's performance under the contract rendered a direct benefit to Ogunde, "[t]he contract thus 'clearly and definitely' indicate[d] that PHS and VDOC intended to provide a benefit to, among others, Ogunde." Id.

In Mr. Hixson's case, SHP modified its original contract in the wake of Ogunde to disclaim any intent to benefit third-party beneficiaries. Mr. Hixson's position was that a correctional health care contractor like SHP should not be able to "contract out" of its contractual obligation to inmates because the whole purpose of SHP's contract was to provide health care to inmates. In support of Mr. Hixson's position, Plaintiff's counsel wrote a 20-page brief of robust legal arguments based on Ogunde, principles of contract law, persuasive authority, and the statute which enabled the SHP contract in the first place. (See Hixson v. Hutcheson et al., 5:17-cv-32, ECF 17.)

At a hearing on the issue, even Honorable Chief Judge Urbanski noted that it was unusual that a party should be able to contract out of an obligation to the obvious beneficiaries of the contract, but ultimately ruled in SHP's favor. At no point did Chief Judge Urbanski suggest that Mr. Hixson's arguments were frivolous or "pinpoint obvious

shortcomings with counsel's legal theories." Indeed, this was another example of Plaintiff's counsel going beyond the call of duty to advocate for Mr. Hixson and all inmates in Virginia who could have a fruitful avenue of liability erased by a few non-specific words. Again, the District Court attacked counsel's professionalism without even inquiring about a case over which Honorable Judge Moon never presided, and that fact resulted in a misleading and false attack on the character of two officers of the Court.

The District Court misconstrued three more cases that are just as bad, but for space reasons, Plaintiff directs this Court to his Objections, if it chooses to read further. The District Court Judge did not preside over any of these cases and made wholly inaccurate statements about those cases.

### B. **The District Court relied on cases that are starkly distinct from the facts of this case**

The District Court attacked Plaintiff's counsel for not affirmatively filing declarations of counsel's competence as a threshold bar to appointing them class counsel. See (ECF 145, p. 7.) In support, the court cited Davis v. White, where plaintiff did not provide a declaration or any other information from his counsel; but the District

Court failed to mention that in <u>Davis</u>, (1) the plaintiff *failed to file a motion to certify class at all,* and (2) the court had already decided to dismiss plaintiff's individual claims, which collectively mooted any possibility of a class action. No. 4:16-CV-18, 2017 WL 6273488, at *25 (E.D. Va. Dec. 8, 2017), <u>aff'd sub nom.</u> <u>Davis v. Samuel I. White, P.C.,</u> 748 F. App'x 509 (4th Cir. 2019). The court also cited <u>Ademiluyi v. PennyMac Mortg. Inv. Trudt Holdings</u>, where the court found counsel was inadequate in part because the proposed counsel was the *daughter* of the proposed class representative (an obvious conflict) and had herself previously *conceded* that she could not adequately represent the class. No. CIV.A. ELH-12-0752, 2015 WL 575362, at *7-8 (D. Md. Feb. 10, 2015).

Here, Plaintiff defeated summary judgment on the proposed class representative's claims and *did* provide declarations of counsel at the District Court's request—declarations that demonstrated no known conflicts. The fact that Plaintiff did not provide these declarations prior to the court's request should not be a reason to deny *class certification* outright—here the "least desirable remedy given the interests of the class in vindicating their claims." 1 Newberg on Class Actions § 3:87

(5th ed.) If the court found this shortfall a reason to disallow counsel from appointment while ignoring counsel's evidenced diligence in this case, this was a failure to comply with the requirements of Rule 23 and warrants review. See Bell, 2019 WL 1848525, at *8.

The stark contrast between these cited cases and the facts of the instant case—in addition unfounded impugning of counsel's integrity by grossly misrepresenting cases over which the District Court Judge never presided—highlights the District Court's abuse of discretion and renders the District Court's insulting comment, "shortfall in legal acumen," about counsel's intelligence wholly unwarranted by the record.

## II.  Why This Court Should Grant Review

Because the District Court failed to appropriately apply the law in undertaking the adequacy of counsel analysis, this Court should grant *de novo* review. Because the District Court abused its discretion in the adequacy of counsel analysis, this Court should grant abuse of discretion review.

## A. Regardless of the five factors, special circumstances warrant immediate review

The issues litigated for nearly two years in this case are of tremendous public importance. The <u>Prado-Steiman</u> court also found that its "authority to accept Rule 23(f) petitions is highly discretionary, and the ... list of factors [enunciated] is not intended to be exhaustive; *there may well be special circumstances that lead us to grant or deny a Rule 23(f) petition even where some or all of the relevant factors point to a different result*." <u>Prado–Steiman</u>, 221 F.3d 1266 at 1276 (emphasis added). The <u>Prado–Steiman</u> court itself allowed an appeal because the certification order implicated public interests of "tremendous importance." <u>Id</u>. at 1277–78.

The District Court itself said that people's lives are on the line, and indeed they are – *Plaintiff's counsel has been fighting for these people's lives for over two years*. One of these people has died, and Plaintiff's counsel is preparing a separate suit for his family. Others who are very sick, including those with cirrhosis of the liver, still haven't been treated, and Plaintiff's counsel may now be filing dozens of other cases to protect the interests of those people who have been waiting on class certification. Others have been released, and Plaintiff's

counsel already filed a separate lawsuit for one man. The tremendous importance of this case is reason enough for this Court to grant review. See Id.

### B. Analysis under the five Prado-Steiman factors

#### 1. The court's denial of class certification at the eve of trial is a "death knell" decision.

The denial of certification by the District Court effectively terminates this suit, which was a suit to effect injunctive relief for thousands of inmates. A so-called "death knell" case can be a case in which the class certification order effectively terminates the litigation "because the denial of certification makes the pursuit of individual claims prohibitively expensive." See Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 834–35 (7th Cir. 1999). The petitioner in such a case must further demonstrate that the district court's ruling is "questionable." Id. at 834–35. Here, Petitioner demonstrates both.

After two years of hard work, ongoing contact with hundreds of potential class members with Hepatitis C, and 12 months of extensive discovery, the District Court chose—*14 days* before trial—to deny class certification. As a result, the District Court has placed Plaintiff's Counsel in the position of filing hundreds of individual lawsuits on

behalf of these individuals. This would be prohibitively expensive for any law firm. Further, Petitioner has already shown that the District Court's ruling is highly questionable despite all deference normally due. See supra, Section I.

Nearly 50 years ago, the First Circuit found that "for a court to refuse to certify a class . . . because of vaguely-perceived management problems is counter to the policy which originally led to the rule . . . and also to discount too much the power of the court to deal with a class suit flexibly, in response to difficulties as they arise." Yaffe v. Powers, 454 F.2d 1362, 1365 (1st Cir. 1972). The Yaffe court also noted the importance of reviewing a decision to deny class certification that is not firmly grounded:

> Had the discretion lodged in the trial court . . . been properly exercised, we would have given its decision weighty deference. But because of several *fundamental legal misconceptions which significantly affected the court's receptiveness to plaintiff's application*, much of the available discretion was not exercised and considerations both of *judicial efficiency* and of *ultimate fairness to the parties* therefore require us to engage in a rather full review of the proceedings below.

Yaffe, 454 F.2d at 1365–66 (emphasis added).

The circumstances here warrant immediate review of the District Court's decision in light of that court's failure to take a *reasonable* look

at Plaintiff's counsel's record in this case and that court's resorting to inaccurate personal attacks that should have had no place in the court's decision-making.

## 2. The District Court's decision is substantially weak

Interlocutory review may be appropriate "when it promises to spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed by this Court on an appeal after final judgment." <u>Prado-Steiman</u>, 221 F.3d at 1274–75. Such a situation may exist, for example, when the district court expressly applies the incorrect Rule 23 standard or overlooks directly controlling precedent. <u>Id</u>. <u>See</u> <u>Pickett v. Iowa Beef Processors</u>, 209 F.3d 1276, 1279 (11th Cir. 2000) (granting Rule 23(f) petition and applying *de novo* standard to reverse district court's interpretation of the adequacy-of-representation test of Rule 23(a)(4)). This "substantial weakness" factor is to be viewed "on a sliding scale," and "interlocutory review may be warranted even if none of the other factors supports granting the Rule 23(f) petition." <u>Lienhart</u>, 255 F.3d at 145-46.

In contrast to applying the four elements that a court *must* consider when appointing class counsel, the court took a distorted view of Rule 23(g) and an equally distorted view of Plaintiff's counsel's record—all to reach a result that severely prejudices the hundreds of proposed class members that have been waiting for this class to be certified in order for their long-sought treatment for the potentially-deadly Hepatitis C virus. <u>See</u> 1 Newberg on Class Actions § 3:81 (5th ed.); Fed. R. Civ. P. 23(g)(1)(A). Because of the flaws described in Section I, <u>supra</u>, demonstrating a severe deviation from the governing standard, the District Court's Opinion is disturbingly brittle. The decision's weakness has severe implications for the hundreds of people who were reasonably anticipating a ruling in their favor following that same Judge denying summary judgment in both this case and in another Hepatitis C-prisoner case seeking the same injunctive and declaratory relief. (<u>See</u> <u>Reid v. Clarke, et al.</u>, 7:16-cv-547, ECF 116, the case settled.)

### 3. Resolving an unsettled legal question

The flaws in the District Court's Opinion are so toxic to the cannon of case law that it must be reviewed. A court should consider

whether the appeal will permit the resolution of an unsettled legal issue that is "important to the particular litigation as well as important in itself." <u>Prado-Steiman</u>, 221 F.3d at 1275 (citing <u>Mowbray</u>, 208 F.3d at 294.) Such an issue might be one that is of moment yet is "likely to escape effective review if left hanging until the end of the case." <u>Id</u>. "The fact that the lawsuit involves a governmental entity, or has a strong public interest component, may also lend the issue particular importance and urgency." <u>Id</u>.

The District Court's application of Rule 23(g) raises serious concerns about the evidentiary burden that a court may impose when assessing the adequacy of class counsel. This appeal presents the opportunity for this Court to decide whether a district court is permitted to make acontextual attacks on the competency and professionalism of proposed class counsel, whose adequacy has not been challenged—while ignoring that counsel's demonstrated, relentless diligence in the case and meaningful results for the proposed class members—in determining *whether a class should be certified at all*. This is indeed important not only to this action but to the body of class action law. <u>See</u> <u>Id</u>. And in the interest of the thousands of inmates

suffering from Hepatitis C, instead of denying certification outright, the court could have at least allowed "a reasonable time period for other attorneys to seek appointment." Ann. Manual Complex Lit. § 21.272 (4th ed.)

**This Appeal has particular importance and urgency** because it centers on a lawsuit against the Virginia Department of Corrections for the immediate treatment of all inmates with Hepatitis C—an issue of life-sustaining importance to the individual class members and national importance for public health. See Prado-Steiman, 221 F.3d at 1275. This Appeal is also particularly important and urgent because it displays a lack of guidance in this Circuit on what evidentiary standard applies to permitting members of the bar to represent class litigants, including incarcerated individuals that are sick and likely cannot afford representation.

### 4. The nature and status of this litigation lends toward immediate review

This case is primed for immediate review because discovery has already concluded and summary judgment was denied to Defendants. Some cases "plainly [are] in a better pre-trial posture for interlocutory appellate review than others[,]" and where there is a "limited or

insufficient record", this "may adversely affect the appellate court's ability to evaluate fully and fairly the class certification decision." Prado-Steiman, 221 F.3d at 1276. Moreover, "a district court's ruling on dispositive motions . . . may significantly redefine the issues in the case and thereby affect the scope of or need for a class." Id. Accordingly, the decision on a Rule 23(f) petition may take into account "the status of discovery, the pendency of relevant [and dispositive] motions, and the length of time the matter already has been pending." Id.

Here, discovery in this case concluded on February 12, 2019, and dispositive motions on the claims for declaratory and injunctive relief were resolved in Petitioner's favor. These claims were to be shared with all class members, as the claims seek Defendants' policies be deemed unconstitutional and seek immediate treatment of all class members (inmates with untreated Hepatitis C). These facts, in addition to the fact that the *issues* of class certification have been pending since Plaintiff first filed his certification motion in December 2017, and the fact that *Defendants ultimately conceded class certification* at the December 2018 hearing, weigh heavy on the side of this Court immediately reviewing the District Court's decision. See Id.

## 5. The effect of future events beg appellate review of this decision

The fifth factor, the "likelihood that future events may make appellate review more or less appropriate," refers to issues such as the status of an action as the first-litigated of a number of similar claims. Lienhart, 255 F.3d at 144. For example, "if the case is likely to be one of a series of related actions raising substantially the same issues and involving substantially the same parties, then early resolution of a dispute about the propriety of certifying a class may facilitate the disposition of future claims." Prado-Steiman, 221 F.3d at 1276.

Here, Plaintiff's counsel has been contacted by hundreds of inmates of the VDOC seeking treatment for Hepatitis C and specifically seeking legal action to get that treatment. Plaintiff's counsel is obliged to pursue as many of these claims as possible—claims by similarly-situated plaintiffs against the very same defendants. The only feasible way for Plaintiff's counsel to pursue these claims is through a class action, and therefore in spite of the District Court's Opinion, should that decision not be reversed on appeal, Plaintiff's counsel will be seeking status as class counsel on a follow-up case on the very same

issue. As such, in the interest of all parties and court resources,

immediate appellate review is appropriate. See Id.

## CONCLUSION

For the reasons stated herein, this Court should GRANT this

Petition.

Respectfully submitted this 7th day of May 2019,


/s/ MARIO B. WILLIAMS
Mario B. Williams (Va. # 91955)

/s/ ANDREW R. TATE
Andrew R. Tate (Ga. #518068)

**NEXUS DERECHOS HUMANOS ATTORNEYS, INC.**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 254-0442/ (404) 935-9391 FAX
mwilliams@ndh-law.com
atate@ndh-law.com
*Counsel for Petitioner*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. _____     **Caption:** Riggleman v. Clark & Amonette

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains ____5,142____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using
MS Word_____ [*identify word processing program*] in
Century Schoolbook, 14 point____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Mario B. Williams_____

Party Name Petitioner_____

Dated: 5/7/2019_____

# CERTIFICATE OF SERVICE

I certify that on  5/7/2019  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Laura Elizabeth Maughan
Office of the Attorney General - Richmond
202 North Ninth Street
Richmond, VA 23219
lmaughan@oag.state.va.us

Meredith M. Haynes
Williams Mullen
Williams Mullen Center
200 South 10th Street, Suite 1600
Richmond, VA 23219
mhaynes@williamsmullen.com

Edward J. McNelis, III
Elizabeth M. Muldowney
Sands Anderson, PC
1111 East Main Street, Suite 2400
P.O. Box 1998
Richmond, Virginia 23218-1998
emcnelis@sandsanderson.com
emuldowney@sandsanderson.com

/s/ Mario B. Williams

Signature

5/7/2019

Date

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

4/29/2019
JULIA C. DUDLEY, CLERK
BY:  S/J.Vasquez

DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

TERRY A. RIGGLEMAN,

*Plaintiff*,

v.

HAROLD CLARKE AND MARK AMONETTE,

*Defendants*.

CASE NO. 5:17-cv-00063

### MEMORANDUM OPINION

SENIOR JUDGE NORMAN K. MOON

This is a putative class action. Terry A. Riggleman ("Plaintiff") is a Virginia inmate who claims he has endured cruel and unusual punishment through the Virginia Department of Corrections' ("VDOC") refusal to treat his Hepatitis C infection. Before the Court is his second motion to certify a class of fellow inmates with Hepatitis C. Certification is inappropriate because Plaintiff is not an adequate class representative. Fed. R. Civ. P. 23(a)(4), 23(g).

Specifically, Plaintiff's counsel is not adequate to handle this case as a class action. Counsel initially failed to provide evidence about their qualifications, experience, or financial ability to litigate a class action—despite binding case law placing a meaningful evidentiary burden on Plaintiff to prove he has adequate counsel. Following a hearing on the motion, Plaintiff's counsel did file two declarations, which the Court has considered. Also, counsel's filings in this case reveal a lack of substantive knowledge about class actions and a disregard for the privacy interests of their client. Lastly, counsel's performance in other cases in this District evinces, among other things, a shortfall in legal acumen and an inability to comply with basic procedural rules.

## I.     Standard of Review

Class certification is a discretionary decision. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). A plaintiff trying to certify a class must (1) propose a readily identifiable class,

(2) satisfy all four requirements of Rule 23(a), and (3) satisfy at least one prong of Rule 23(b).  *See id*. at 358; Fed. R. Civ. P. 23(a), (b).  Further, Rule 23(g) sets out specific factors a court must consider in appointing class counsel.  Fed. R. Civ. P. 23(g)(1).

"A party seeking class certification must do more than plead compliance with . . . Rule 23['s] requirements.  Rather, the party must present evidence that the putative class complies with Rule 23."  *EQT Prod.*, 764 at 357.; *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." (emphasis in original)).  Critically here, a "district court has an independent obligation to perform a rigorous analysis to ensure that all of the prerequisites have been satisfied."  *EQT Prod.*, 764 F.3d at 358.

## II.    Adequacy of Counsel

Because class certification fails if even one Rule 23 requirement for certification is not met, the Court can proceed directly to the one it finds most obviously lacking:  adequacy of proposed class counsel.  Rule 23(a) requires that the prospective class comply with four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *EQT Prod.*, 764 F.3d at 357; Fed. R. Civ. P. 23(a).  In his brief in support of the motion for certification of a class, Plaintiff states that Rule 23(a)(4) turns on two inquiries: (1) whether the named plaintiffs have interests conflicting with those of absent class members and (2) whether class counsel are competent to conduct the class action and fairly represent the interests of the class.  (Dkt. 101 at 19).  At the December 20, 2018 hearing on Plaintiff's motion to certify a class, Defendants' counsel took no position on the adequacy of Plaintiff's counsel to represent a class in this case.  (Dkt. 115 at 29-30).

– 2 –

In 2003, Rule 23 was amended, in part, by adding subsection 23(g), which governs the appointment of class counsel. Rule 23(a)(4) sets out the requirements for adequate class representatives while Rule 23(g) and Rule 23(c)(1)(B) address the requirements for class counsel. *Bell v. Brockett*, --- F.3d ---, 2019 WL 1848525, at *7 (4th Cir. 2019). Rule 23(g) "creates an explicit textual mooring for the class counsel analysis[,] but most courts continue to employ the substantive standards generated under Rule 23(a)(4) prior to Rule 23(g)'s adoption in their analysis of counsel's adequacy." 1 William B. Rubinstein, *Newberg on Class Actions* § 3:72 (5th ed.) (quoted in *Sharp Farms v. Speaks*, 817 F.3d 276, 290 n.7 (4th Cir. 2019)).

To the extent Rule 23(g) governs the determination of the adequacy of proposed class counsel, a finding of adequacy remains a part of the certification decision. First, any order that certifies a class action must appoint counsel under Rule 23(g), meaning that a determination of counsel's adequacy must be made prior to entry of an order. *See* Fed. R. Civ. P. 23(c)(1)(B). Second, the Advisory Committee Note to the 2003 Amendment stated that while Rule 23(a)(4) continues to call for scrutiny of the proposed class representative, Rule 23(g) "will guide the court in assessing proposed class counsel as part of the certification decision." Fed. R. Civ. P. 23, adv. comm. notes (2003 amendment). Third, adoption of Rule 23(g) did not change the long-standing rule that "[a] class action is appropriate *only when both* class representatives and class counsel adequately protect the interests of the class." *Bell*, 2019 WL 1848525, at *6 (emphasis added). Thus, a finding that proposed counsel are adequate remains a requirement of certifying a class.

When only one applicant seeks appointment, as here with respect to Plaintiff's counsel, the court may appoint the applicant only if the applicant is adequate under Rule 23(g)(1) and (4). Rule 23(g)(4) provides that any appointed class counsel must "fairly and adequately represent the

– 3 –

interests of the class."[1]  Rule 23(g)(1) provides that the court must consider (1) the work counsel

has done in identifying or investigating potential claims in the action; (2) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action; (3)

counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to

representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  The court may consider any other matter

pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R.

Civ. P. 23(g)(1)(B).

The inquiry focuses on whether counsel is competent, dedicated, qualified, and

experienced enough to appropriately conduct the litigation as a class action.  *See*, *e.g.*, *In re Serzone*

*Prod. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D.W. Va. 2005); *McGlothlin v. Connors*, 142 F.R.D.

626, 633–34 (W.D. Va. 1992) (same).  "[B]ecause of the broad binding effect of class-action

judgments, serious attention is given to the adequacy of representation of those absent class

members who will be bound by the judgment."  Wright & Miller, 7A *Fed. Prac. & Proc. Civ.* §

1769.1 (Westlaw 3d ed. Sept. 2018).  The "inquiry into the adequacy of class counsel" is of

"extreme importance."  *Id.*

## A.  Evidence about Qualifications of Counsel

It is the plaintiff's burden to demonstrate compliance with Rule 23.  *EQT Prod.*, 764 F.3d

at 358; *see Wal-Mart*, 564 U.S. at 350 (requiring plaintiff to "affirmatively demonstrate"

---

[1]     Courts have taken five distinct approaches to the relationship between Rule 23(a)(4) and
Rule 23(g), ranging from analyzing the adequacy of class counsel under Rule 23(a)(4) as if Rule
23(g) had never been adopted to restricting the analysis to Rule 23(g), and approaches in between.
1 *Newberg on Class Actions*, § 3.80.  The Court will consider the adequacy of counsel under Rule
23(g) but will also look to previous decisions under Rule 23(a)(4) because both Rule 23(a)(4) as
applied to counsel and Rule 23(g) consider whether counsel will "fairly and adequately"
protect/represent "the interests of the class."

compliance with Rule 23 "in fact"). Plaintiff falls short of meeting this burden as to the adequacy of his counsel.

Plaintiff attached over 400 pages of documents to his certification brief. The documents—many of which were already in the record—consist of Plaintiff's medical records, VDOC records, letters, a hearing transcript, and a few discovery responses. They did not address the issue of counsel's competency, experience, or ability to effectively prosecute a class action. As of the hearing on the motion there was no evidence before the Court indicating, for example, whether counsel has ever represented a certified class, whether they are experienced with Eighth Amendment claims, or whether they (or their firm) could shoulder the financial burden of prosecuting a class action. *See*, *e.g.*, *Murdoch v. Rosenberg & Assocs., LLC*, No. RWT 12-CV-2234, 2013 WL 1209144, at *7 (D. Md. Mar. 22, 2013) (finding inadequacy of counsel who had "not had a class certified in any federal district courts in Maryland, the District of Columbia, or Virginia").

At the hearing, when asked if Plaintiff's counsel had ever tried a class action, one of Plaintiff's counsel replied that counsel were competent to handle the case and would have all the resources needed if the class was certified. At that point, Plaintiff's other counsel provided a direct answer than no, neither he nor a member of his firm had tried a class action but that he had tried, litigated, and settled many cases, including prison cases. The latter counsel noted that counsel had a class action that was being settled in Tennessee and "[w]e have had several over the course of the years. They have all settled." (Dkt. 115 at 25-26). Counsel also made reference to a former governor of Georgia who had expressed an interest in the case and who had experience as a class attorney. (Dkt. 115 at 22, 26). Further evidence on this latter matter, however, was not entered at the hearing or in subsequent declarations of Plaintiff's counsel as to class action experience.

– 5 –

As permitted by the Court, Plaintiff's counsel filed declarations with respect to their experience and qualifications. (Dkts. 113, 114). Mr. Tate's declaration stated that he was admitted to practice law in June 2017 and has worked directly under Mr. Williams on civil rights litigation since 2016. He has worked on civil rights cases, including prison litigation for violations of the Eighth Amendment. He further states that he and his firm have investigated the VDOC policies and guidelines regarding Hepatitis C since early 2017 and has worked with their expert Hepatologist, retained for this litigation. (Dkt. 114 at 2).

Mr. Williams' declaration states that he is licensed to practice in New York, Georgia, and Virginia and has litigated cases in those and other states. He was licensed to practice law in June 2010 and his practice has been almost exclusively in the area of constitutional law/civil rights, including, but not limited to, prison litigation involving denial of adequate medical care. (Dkt. 113 at 2-3).

Significantly, neither declaration set out counsel's prior class action experience or even mentioned class actions save for a statement that to the best of counsels' knowledge, they had no conflict of interest with any class member or potential class member. (Dkt. 113 at 3; Dkt. 114, at 3). Mr. Williams did make a reference to settling a "multiple plaintiff action in Tennessee, regarding a jail program that offered time for misdemeanor offenses in exchange for an agreement to undergo vasectomies or Nexplanon injections." (Dkt. 113 at 3). It is not clear if this "multiple plaintiff action in Tennessee" is the same as the action mentioned at the hearing as currently being settled in Tennessee.

To be sure, class actions often settle without trial. But Plaintiff's counsel's declaration failed to list, let alone describe, cases in which Plaintiff's counsel have served as class counsel or otherwise have experience in representing a class. Instead, Mr. Williams filed 230 pages of

– 6 –

supporting documentation to his declaration, which consisted of a letter from the Organization of American States which predates his admission to the bar and does not address his competency to represent class members, two petitions for writ of certiorari before the United States Supreme Court regarding prisoner cases (along with lower court decisions in those cases), and a magazine article briefly referencing Mr. Williams with respect to one of the two prisoner cases. (Dkt. 113 at 5-235).

Since adequacy of counsel is a requirement of Rule 23, a plaintiff hoping to become a class representative need to put forward evidence of his attorney's competence. *See*, *e.g.*, *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 568 (E.D. Va. 2016) (referencing attorney declaration); *Siquic v. Star Forestry, LLC*, No. 3:13CV00043, 2015 WL 5818263, at *6 (W.D. Va. Oct. 5, 2015) (same); *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (same). Counsel's initial failure to do so here reveals a dual deficiency. It both is a failure to meet Plaintiff's evidentiary burden, and demonstrates counsel's inadequacy by revealing a lack of substantive knowledge and diligence. *See Davis v. White*, No. 4:16-CV-18, 2017 WL 6273488, at *25 (E.D. Va. Dec. 8, 2017) (M.J.) (concluding court was "unable to make an affirmative finding of adequacy" where there was no declaration from counsel, "or any other information at all," concerning counsel's competency and experience), *aff'd* 748 F. App'x 509 (4th Cir. 2019) (unpublished per curiam); *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, No. ELH-12-0752, 2015 WL 575362, at *8 (D. Md. Feb. 10, 2015) ("The Court has no information about what resources counsel may call upon, financial or otherwise, to aid and support plaintiff's continued prosecution of this case."); *compare Siquic*, 2015 WL 5818263, at *6 (considering

– 7 –

whether counsel were financially able to prosecute case, and finding they were based on actual evidence in the record).[2]

The declarations of Plaintiff's counsel do provide information regarding experience in the substantive law relating to Eighth Amendment litigation and firm resources, and the Court acknowledges that Mr. Williams has almost a decade of civil rights litigation experience, including prisoner litigation. The Court affirmatively concludes, however, that counsel is inadequate for the proposed class based on its experience with counsel in this case and counsel's performance in other cases in this District.

## B.   Initial Motion to Certify and Other Problems in This Case

Plaintiff filed his first motion to certify in December 2017. (Dkt. 39). That motion was obviously deficient as a matter of law. It neither cited nor attached any evidence, and instead referenced only the complaint's allegations. The Court denied the motion summarily in a two-page order, citing precedential cases making clear that resting certification on only the pleadings was improper. (Dkt. 60). For example, in 2014, the Fourth Circuit wrote: "A party seeking class certification must do more than plead compliance with the aforementioned Rule 23 requirements. Rather, the party *must present evidence* that the putative class complies with Rule 23." *EQT Prod.*

---

[2]      Plaintiff's brief makes a single assertion that he "has retained competent counsel in both civil rights and class action litigation who will rigorously prosecute the case on behalf of all class members." (Dkt. 101 at 20). A solitary citation to the complaint follows, which itself summarily asserts that "Plaintiff has retained competent counsel in both civil rights and class action litigation." (*Id.* (citing Dkt. 1 ¶ 77)). The "extreme importance of the inquiry into the adequacy of class counsel means that the court should not be easily satisfied with a self-serving and one-sided statement by the class attorney that he meets the requirements of the rule." 7A Fed. Prac. & Proc. Civ. § 1769.1 (Westlaw 3d ed. Sept. 2018).

Moreover, these bald contentions indicate ignorance of the *evidentiary* burden—imposed by cases like *Wal-Mart* and *EQT*—to actually show (not just assert) satisfaction of Rule 23. This apparent ignorance is especially troubling because the Court already denied the first motion to certify on the specific ground that Plaintiff failed to cite any evidence and instead improperly "rested entirely on the complaint itself." (Dkt. 60; *see infra* § II.B).

– 8 –

*Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014) (emphasis added) (citation omitted).  And the Supreme Court observed in 2011 that "Rule 23 does not set forth a mere pleading standard."  *Wal–Mart,* 564 U.S. at 350.  The first motion for certification thus illustrates counsel's lack of familiarity with basic class actions principles, as well as a lack of thoroughness in failing to uncover them.

Another issue is perhaps more problematic, given that counsel hope to represent a class regarding a medical issue.  Federal Rule of Civil Procedure 5.2 requires a party to partially redact certain sensitive personal identifiers—like birth dates and social security numbers—from all filings.  Fed. R. Civ. P. 5.2(a) (*e.g.,* only year of individual's birth, last four digits of individual's social security number).  The local rules of this District reiterate that requirement, and they place the duty of compliance "solely" on counsel.  W.D. Va. Local Gen. R. 8.

Plaintiff's counsel has violated both rules.  The 400-plus pages of evidence supporting Plaintiff's motion for certification are littered with unredacted personal identifiers, mostly from Plaintiff's medical records.  On just a cursory review, the Court has identified over a dozen instances of unredacted social security numbers or birth dates.  (Dkt. 101-3 at ECF 2–14, 19–26, 28; dkt 101-6 at ECF 2–3).  Compounding matters, those documents already existed on the docket in unredacted form, so counsel have replicated their errors by refiling them.  (*See* Dkt. 92-3, 92-6; *see also* Dkt. 77-1).

These failures are especially troublesome given that the case at present involves only a single plaintiff.  Counsel apparently cannot ensure protection of personal, sensitive information of even one plaintiff, let alone sensitive information they might encounter if litigating this case as a class action on behalf of hundreds (perhaps thousands) of prisoners.  Counsel's failure to protect

– 9 –

their existing client's sensitive personal information shows a lack of attentiveness to both his interests and the rules of court.

Where "class counsel ha[s] made significant errors in [an] action, both of substance and form," a district court is within its discretion to deny certification. *Skipper v. Giant Food Inc.*, 68 F. App'x 393, 397 (4th Cir. 2003); *see Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 471 (D. Md. 2002). The Court finds that this is such a situation.

## C.    Other Issues Bearing on Adequacy of Counsel

Further, counsel's performance in other cases in this District leaves the Court convinced they could not adequately represent the class.[3]

In *Cashion v. Lee*, No. 5:17-cv-00004 (Nov. 8, 2017), counsel filed a claim that Chief Judge Urbanski found, and counsel "d[id] not contest," was barred by the statute of limitations based on "the face of the" amended complaint. (Dkt. 48 at 5). The plaintiff had until December 11, 2016 to file his claim, but "instead dallied, filing this action on January 31, 2017—after the limitations period had expired." (*Id.*).

In *Hixson v. Hutcheson*, No. 5:17-cv-00032 (June 19, 2017), Chief Judge Urbanski pinpointed another obvious shortcoming with counsel's legal theories. The plaintiff claimed he was an intended third-party beneficiary of a contract, "despite contract terms that explicitly disavow[ed] any such intent." (Dkt. 29 at 10). Chief Judge Urbanski observed that the "plain language of the Contract" "expresse[d] as clearly as possible" that there was no third-party beneficiary: It stated that the "*parties agree that they have not entered into this Agreement for the benefit of any third person or persons*." (Dkt. 29 at 6, 7 (emphasis in original opinion)).

---

[3]      Mr. Williams and Mr. Tate of Nexus Drechos Humanos Attorneys, Inc. are plaintiff's counsel. One or both attorneys were counsel of record in the cases surveyed herein.

Other cases reveal failures to professionally and competently conduct discovery, or follow the rules of court.  In *Runion v. Shortell*, No. 5:17-cv-00091 (Nov. 3, 2017), counsel moved to delay the opposing party's deposition of their client "less than twenty-four hours before" it was scheduled to occur.  (Dkt. 22 at 1).  Magistrate Judge Hoppe found that the basis of the motion was "not unreasonable," but the "problem is the timing of these objections."  (*Id*. at 2).  Counsel originally failed to raise the objections when coordinating scheduling of the deposition, and later "unilaterally canceled" it.  (*Id*.).  Because opposing counsel had incurred expenses for the deposition "that did not go forward because Plaintiff untimely cancelled the deposition," the plaintiff was ordered to pay those expenses.  (*Id*.).

Months later, in *Varner v. Roane*, No. 5:17-cv-00080 (May 23, 2018), counsel's conduct drew a stronger rebuke.  The defendant had requested deposition dates from plaintiff's counsel "[f]or the past three months" to no avail, so Magistrate Judge Hoppe instructed counsel to provide potential dates.  (Dkt. 44 at 1).  Counsel responded by offering a single date, noticing their client's own deposition for that date at their office, and "insisted" that they question their client before opposing counsel asked questions.  (*Id*.).  Judge Hoppe stated that "Defendant's counsel's objects to Plaintiff's counsel's actions as gamesmanship, and the Court finds that objection to be well taken."  (*Id*.).  He found that "Plaintiff's counsel has delayed and impeded the Defendant's ability to conduct Plaintiff's deposition."  (*Id*. at 2).  Judge Hoppe concluded:  "Boiled down, this is a silly dispute brought about by Plaintiff's counsel's unprofessional conduct.  Should such conduct continue, the Court will have to consider imposing sanctions."  (*Id*.).

That warning did not mark a turning point.  Thereafter, in *Haleem v. Quinones*, No. 5:17-cv-00003 (Oct. 15, 2018), the defendant asserted that plaintiff failed, for over two months, to

– 11 –

provide discovery responses or provided inadequate responses.  (Dkt. 97 at 1).[4]  Judge Hoppe observed that counsel's "failure to take any meaningful steps to gather responsive documents and make a timely discovery production shows an extreme lack of diligence" that "falls well below the minimum expected of attorneys who practice in this Court."  (*Id*. at 1–2).  A separate failure to obtain documents related to plaintiff's claims for damages from lost wages, "again show[ed] an extreme lack of diligence" on counsel's part.  (*Id*. at 2).

And recently, in *Rogers v. Clarke*, No. 5:17-cv-70073 (Dec. 12, 2018), counsel filed non-sealed documents containing *over 50* unredacted personal identifiers (birth dates and social security numbers) of their incarcerated client, in violation of Rule 5.2 and the local rules.  (Dkt. 86-7 at ECF 23–24, 158, 164–84; Dkt. 86-8 at ECF 22–23, 164–83; Dkt. 86-9 at ECF 168; Dkt. 86-10 at ECF 74–81).

*        *        *

In sum, counsel lack the experience, diligence, and discipline necessary to competently represent the proposed class.  "It is always unpleasant for a court to be critical of any members of the bar."  *Grimes v. Pitney Bowes Inc.*, 100 F.R.D. 265, 271 (N.D. Ga. 1983).  But an aversion to unpleasantness is no reason to overlook inadequate counsel.  Too much is at stake.  If a class was certified, the health—perhaps even survival—of absent inmates might turn on the outcome.

---

[4]     To be fair, the order in *Haleem* singles out an attorney with Mr. Williams' and Mr. Tate's law firm, but does not name them.  That is perhaps because the named attorney was the one who appeared on behalf of the plaintiff at the hearing.  (No. 5:17-cv-00003, Dkt. 97 at 1).

In any event, both Mr. Williams and Mr. Tate were counsel of record for plaintiff in *Haleem* for *over a year* before Judge Hoppe's ruling.  (No. 5:17-cv-00003, Dkts. 4, 43).  Accordingly, both shared the responsibility for professionally and competently representing the plaintiff—including by exercising diligence in complying with discovery obligations.  Judge Hoppe's order is thus evidence that they failed to do so.

The Court notes that Mr. Williams included an exhibit to his declaration setting out a motion for a telephonic hearing with attachments (various correspondence) he asserts show due diligence in the case before this Court.  (*See* Dkt. 113, at ECF 236-311).

– 12 –

The motion for class certification will be denied.  An appropriate order will issue.  The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to counsel.

Entered this __29th__ day of ˌ April 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE