CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 04, 2024
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|  |  |
|---|---|
| TERRY A. RIGGLEMAN, | CASE No. 5:17-cv-00063 |
| *Plaintiff*, |  |
| v. | MEMORANDUM OPINION |
| HAROLD CLARKE, *et al*., |  |
| *Defendants*. | JUDGE NORMAN K. MOON |

This matter is before the Court on the issue whether Defendants Clarke and Dr. Amonette are entitled to qualified immunity on Plaintiff's claims that they failed to timely provide him adequate medical care for Hepatitis C, in compliance with the Eighth Amendment, while he was incarcerated by the Virginia Department of Corrections ("VDOC"). For the following reasons, the Court concludes that recent Fourth Circuit precedent establishes that Defendants are entitled to qualified immunity.

This Court previously determined that Defendants were entitled to qualified immunity, awarded summary judgment to Defendants as to Plaintiff's claims for monetary damages, but held that Plaintiff's claims for declaratory and injunctive relief would proceed to trial. Dkt. 141. The Court subsequently disposed of numerous pre-trial motions but canceled the bench trial and stayed the case pending a ruling from the Fourth Circuit whether it would accept Defendant's request for interlocutory appeal. Dkts. 166–67. The Fourth Circuit subsequently denied leave to appeal. Dkt. 169.

Following communications from Plaintiff's counsel that VDOC was "in the process of getting him screened for cancer and having him promptly treated for his Hepatitis C (and cancer, if present)," the Court ordered the parties to submit periodic status reports concerning Plaintiff's

1

treatment. Dkt. 170. The parties thereafter submitted numerous status reports culminating in his

completion of antiviral drugs, until such time as his "Hep C viral load … was undetectable," and

he had not "experienced a re-occurrence of Hep C." Dkt. 182; *see also* Dkts. 173, 174, 177, 178,

179, 180 (status reports).

      Plaintiff then filed a motion to voluntarily dismiss the remaining claims for declaratory

and injunctive relief under Fed. R. Civ. P. 41(a)(2), which allows for dismissal upon such terms

as the Court considers proper; and Plaintiff advised of his intent to appeal the denial of class

certification and grant of qualified immunity to Defendants. Dkt. 183. The Court convened a

hearing on the motion, and ordered the parties, among other things, "to be prepared to address

the potential application of *Gordon v. Schilling*, 937 F.3d 348 (4th Cir. 2019)," to Plaintiff's

motion and this case. Dkt. 184. The Court inquired whether *Gordon v. Schilling* compelled a

different conclusion on the Court's prior qualified immunity analysis. The parties submitted

post-hearing filings: Defendants filed a brief opposing the Court vacating its prior grant of

qualified immunity, Dkt. 190, while Plaintiff filed a submission supporting vacatur of qualified

immunity, Dkt. 199, to which Defendants replied, Dkt. 200.

      The Court then became advised that the Fourth Circuit was considering an appeal in

*Pfaller v. Amonette*, No. 21-1555, 21-1612 (4th Cir.). This Court issued an order to the parties,

stating that the *Pfaller* case "concerns whether Dr. Amonette and another defendant are entitled

to qualified immunity from the plaintiff-prisoner's claims that they violated his Eighth

Amendment rights to adequate medical care arising out of their alleged failure to treat his

Hepatitis C." Dkt. 201. The Court inquired whether the parties would support staying this action

given the relevance of the *Pfaller* decision to the issues presented in this case. *Id.* The parties

agreed that a stay was appropriate, and thus the Court stayed this case pending resolution of the appeal in *Pfaller v. Amonette*. *See* Dkts. 201–04.

Following issuance of the Fourth Circuit's decision in *Pfaller*, Defendants filed a Status Report arguing that the Fourth Circuit's decision supported their position that here, Defendant Dr. Amonette and Defendant Harold Clarke were entitled to qualified immunity. Dkt. 207 at 1–2. Plaintiff's counsel did not respond to Defense counsel's inquiries as to Plaintiff's position for the Status Report. *Id.* at 2. Nor has Plaintiff's counsel in this case filed any supplemental brief or argument to address the impact of *Pfaller*, or to respond to Defendants' position that *Pfaller* compels a decision that Defendants were entitled to qualified immunity and thus an award of summary judgment.

Plaintiff did, however, file a separate *pro se* action in this Court against two of the same defendants (Harold Clarke and Dr. Amonette), as well as a third: Dr. Kyle Smith. *Riggleman v. Clarke*, No. 7:22-cv-18 (W.D. Va.) (the "*Pro Se* Case"). In Plaintiff's *Pro Se* Case, this Court issued a memorandum opinion and order granting the motion to dismiss from Defendants Clark and Amonette. The Court determined that Plaintiff's claims in the *Pro Se* case "are the same claims" that he brought in this action, and "relate to the same core facts—the denial of treatment for his Hepatitis C," and therefore Plaintiff's claims against Defendants Clark and Amonette constituted improper claim-splitting. *Pro Se* Case Dkt. 47 at 10. Yet while the Court dismissed Defendants Clark and Amonette from the *Pro Se* Case, it allowed Plaintiff's claims against the third defendant (Dr. Kyle Smith) to proceed. *Id.* at 10–17. Dr. Smith has since filed a motion for summary judgment, which is fully briefed and ripe for a decision. Contemporaneously with the issuance of this decision, the Court will in Plaintiff's *Pro Se* Case, grant Dr. Smith's motion and

award him summary judgment. And now in this case, especially with the benefit of *Pfaller v. Amonette*, the resolution of Defendants' qualified immunity is likewise ripe for decision.

The qualified immunity analysis proceeds in two steps. First, a plaintiff must show a violation of a constitutional right. *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). And second, "the right at issue must have been 'clearly established' at the time of the defendant's alleged misconduct." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Court can address these steps in either order. *Estate of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020).

Upon consideration of the Fourth Circuit's decision in *Pfaller v. Amonette*, Defendants' filing addressing its impact, and the parties' prior filings concerning qualified immunity in this case, this Court concludes that the *Pfaller v. Amonette* opinion is dispositive of the issues before this Court. 55 F.4th 436 (4th Cir. 2022).

In that decision, the Fourth Circuit considered the issue whether Dr. Amonette (one of two defendants in *this* case), was likewise entitled to qualified immunity from *another* plaintiff's claims based on treatment guidelines he designed for inmates with Hepatitis C. 55 F.4th at 442. The Fourth Circuit described his challenged conduct as follows:

> Dr. Amonette, for his part, created a system of prioritization where the sickest inmates received treatment first. Those that did not qualify for treatment nonetheless received continuous monitoring. At the time, the medical community and the Federal Bureau of Prisons agreed. They recognized that while immediate treatment of all hepatitis C patients was recommended, prioritization was reasonable where resources were limited.

*Id.* at 455.

The Fourth Circuit noted that "various Courts of Appeals … have cut different ways regarding whether similar treatment guidelines pass constitutional muster or violate clearly established law." *Id.* But, the Fourth Circuit explained, it was precisely that "varying case law

4

[that] shows the inherent gray area that Dr. Amonette was operating in," *id.*, and "qualified immunity protects public officials from bad guesses in gray areas," *id.* (quoting *Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012)). The Fourth Circuit further clarified that, when he was "[t]asked with designing a treatment regimen for a novel drug, Dr. Amonette wasn't given notice by our case law that his ultimate choice—a system that prioritized treatment with direct-acting antivirals for the sickest patients while offering monitoring for others—was (as we have assumed)—deficient." *Id.* In other words, "[a] prisoner's purported right not to be subjected to a treatment regimen that prioritized antiviral treatment to prisoners with the most advanced levels of fibrosis was not clearly established when Dr. Amonette designed the Guidelines in 2015." *Id.* at 456. Thus, the Fourth Circuit concluded that the record "doesn't sufficiently show that Dr. Amonette knew that the Guidelines, while wanting, violated the Eighth Amendment." *Id.* at 455. Therefore, The Fourth Circuit "reverse[d] the denial of qualified immunity for Dr. Amonette." *Id.* at 458.

As in *Pfaller*, in this case Plaintiff has sued Dr. Amonette in his role as then-VDOC Chief Medical Officer. Dkt. 199 at 8; *Pfaller*, 55 F.4th at 442. In that role, Dr. Amonette "[wa]s the clinical supervisor of the physicians employed by the VDOC." Dkt. 141 ("MSJ Mem. Op.") at 3. Similarly, like Pfaller, Plaintiff has sued Dr. Amonette for the alleged deprivation of Plaintiff's "Eighth Amendment right to medical care due to [Dr. Amonette's] failure to treat [Plaintiff's] (and many VDOC inmates') Hepatitis C because the disease had not progressed far enough, per the exclusion and inclusion criteria of [VDOC] Guidelines." Dkt. 199 at 2; *id.* at 3 (asserting that Plaintiff "was denied treatment because his condition had not deteriorated to the point of inclusion under VDOC's Guidelines"); *Pfaller*, 55 F.4th at 442 (alleging that Dr. Amonette "designed treatment guidelines for inmates with hepatitis C that unconstitutionally excluded

Pfaller from receiving treatment"). Dr. Amonette had developed those allegedly deficient Hepatitis C treatment Guidelines. Dkt. 199 at 8 ("his own guidelines"); *Pfaller*, 55 F.4th at 442.

Under the Guidelines, VDOC would refer inmates with Hepatitis C to a clinic at Virginia Commonwealth University based on certain criteria, including their level of fibrosis, if any. MSJ Mem. Op. at 3; *Pfaller*, 55 F.4th at 442. Inmates with a score at the high end of the scale were "automatically referred to VCU for evaluation"; inmates in the "middle tier" were to receive "additional testing to determine whether [they] should be referred"; and "those who scored on the low end were not to be referred for treatment," but instead "received periodic laboratory drug testing and chronic care appointments." *Pfaller*, 55 F.4th at 442–43; *see* MSJ Mem. Op. at 4–5 (similar description of Guidelines).

In 2007, Plaintiff was originally diagnosed with Hepatitis C, Dkt. 199 at 8—the same year as Pfaller, 55 F.4th at 443. When Plaintiff was seen by another physician between 2015 to 2018, he scored on the low end of the scale, indicating either no fibrosis or non-fibrotic liver or mild hepatic fibrosis. MSJ Mem. Op. at 4. In any event, under those then-existing VDOC Guidelines, Plaintiff did not qualify for referral and accordingly, Dr. Amonette did not refer Plaintiff to VCU for Hepatitis C treatment. *Id.*; *see also* Dkt. 129 at 5–6 (¶¶ 14–21); Dkt. 132 at 5–6. Another doctor, Dr. Landauer saw Plaintiff in chronic care for his hepatitis C; Dr. Amonette did not personally interact with Plaintiff when he was seeking medical care within VDOC. *See* Dkt. 132-3 ("Amonette Dep.") at 25.

As in *Pfaller*, the Court will "assume, without deciding, that Dr. Amonette's actions amounted to deliberate indifference and turn directly to … the clearly established prong of the qualified-immunity analysis." 55 F.4th at 454. Under the facts of this case, as in *Pfaller*, the Court concludes that Dr. Amonette similarly "wasn't given notice by [Fourth Circuit] case law

that his ultimate choice—a system that prioritized treatment with direct-acting antivirals for the sickest patients while offering monitoring for others—was (as we have assumed), deficient." *Id.* at 455. Further, as relevant here too, the Fourth Circuit held that "[a] prisoner's purported right not to be subjected to a treatment regimen that prioritized antiviral treatments to prisoners with the most advanced levels of fibrosis was not clearly established when Dr. Amonette designed the Guidelines in 2015." *Id.* at 455–56. Plaintiff's allegations concerning Dr. Amonette here are materially similar to those that the Fourth Circuit concluded in *Pfaller* supported the award of qualified immunity for Dr. Amonette in that case.[*] Nor has Plaintiff identified any precedent for the Court that would compel a different conclusion on the "clearly established prong" from that in *Pfaller*, based on subsequent legal developments between 2015 and March 2017—to account for the slightly later timing of Plaintiff's factual allegations in this case. *See* Dkt. 1 ("Compl.") ¶¶ 40–67 (allegations specific to Plaintiff).

Plaintiff's argument that Clarke, the then-Director of VDOC, was not entitled to qualified immunity is even more tenuous. *See* Dkt. 199 at 8. Plaintiff asserts that Clarke, as "the Director of VDOC," is responsible for "overseeing the operation and administration of Virginia's prisons, which includes formulating and ensuring the provision of medical treatment to inmates." *Id.* Plaintiff charges that Clarke had to have been aware that the guidelines "were systematically denying treatment to thousands of inmates," and that he "endorsed Amonette's course of action."

---

[*] Plaintiff's allegations concerning Dr. Amonette (and Harold Clarke) in this case further stand in stark contrast with those the Fourth Circuit found *were* sufficient in *Pfaller* as to another defendant. *See Pfaller*, 55 F.4th at 453. In that case, the other defendant, Dr. Wang, was Pfaller's "treating physician," and his supervisor, the chief physician, had ordered that Pfaller be provided "further testing when his FIB-4 score rose above a specific level" that was "high enough to indicate progression of his hepatitis C and worrying signs of liver disease." *Id.* Yet allegedly, Dr. Wang "ignored this directive and delayed the necessary treatment—for two and a half years." *Id.*

*Id.* at 10. And, as with his claims against Dr. Amonette, Plaintiff asserts that Clarke knew that Plaintiff had Hepatitis C and that he had not been treated. *Id.* at 9. At most, these allegations, in all material respects, track the allegations Plaintiff made vis-à-vis Dr. Amonette, and for which the Fourth Circuit in *Pfaller* that "Dr. Amonette was not on sufficient notice that he was violated a clearly established right," as required to deny him qualified immunity. *Pfaller*, 55 F.4th at 454.

Plaintiff's reliance on *Gordon v. Schilling*, 937 F.3d 348 (4th Cir. 2019), does not compel a contrary conclusion. *See* Dkt. 199 at 1, 8–13. In that case, the Fourth Circuit considered only step one of the qualified immunity framework—whether the plaintiff had shown that the defendant violated plaintiff's constitutional right (i.e., was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment). *Gordon*, 937 F.3d at 356–57. The Fourth Circuit did not address whether the defendant was entitled to qualified immunity, or specifically the second step of the qualified immunity framework—whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See id.* at 362–63. The Fourth Circuit addressed that second step of the qualified immunity analysis in *Pfaller*. This Court thus concludes that *Pfaller* supplies the rule of decision here.

It goes without saying that Plaintiff must establish both steps of the qualified immunity analysis to overcome a qualified immunity defense. *See Pearson*, 555 U.S. at 232. Here, even assuming that Plaintiff had established that Harold Clarke's and Dr. Amonette's actions amounted to deliberate indifference (on step one), Plaintiff has not demonstrated that either Defendant Clarke or Dr. Amonette were on notice that they were violating a clearly established right (step two). *See Pfaller*, 55 F.4th at 445 ("Under the second prong of the qualified-immunity analysis, an official is nonetheless entitled to immunity if the right was not so clearly established that a reasonable official would understand that what he is doing violates that right.") (cleaned

up)). Accordingly, for these reasons as well as those set forth in the prior opinion of the Court, *see* Dkt. 141, the Court concludes that Defendants remain entitled to qualified immunity on Plaintiff's claims.

Therefore, noting Defendants' request that the Court rule on Plaintiff's previously filed motion to voluntarily dismiss, the Court will dismiss Plaintiff's remaining claims of declaratory and injunctive relief, without prejudice, and dismiss Defendants Clarke and Dr. Amonette from this case. *See* Dkt. 207 at 2; Dkt. 183 at 3.

The Clerk of the Court is directed to send this Memorandum Opinion to all counsel of record.

Entered this __4th__ day of September, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE